# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| SIERRA CLUB,<br><br>        Plaintiff,<br><br>    v.<br><br>LISA P. JACKSON, Administrator,<br>U.S. Environmental Protection Agency,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)    Case No.  11-1278-PLF<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MOTION OF SIERRA CLUB FOR SUMMARY JUDGMENT

Plaintiff Sierra Club hereby moves this Court for summary judgment pursuant to Fed. R.

Civ. P. 56.  For the reasons given in the accompanying memorandum of points and authorities,

Sierra Club is entitled to summary judgment as a matter of law and respectfully requests that the

Court vacate the final action taken by defendant at 76 Fed. Reg. 28,662 (May 18, 2011) and

titled "Final rules; Delay of effective dates."


DATED: August 3, 2011

Respectfully submitted,

/s/James S. Pew
James S. Pew
(D.C. Bar # 448830)
Earthjustice
1625 Massachusetts Avenue, NW
Suite 702
Washington, D.C. 20036
Phone: (202) 667-4500
Fax: (202) 667-2356
Email: jpew@earthjustice.org
*Counsel for Sierra Club*

/s/Sanjay Narayan (with permission)
Sanjay Narayan
(CA Bar # 183227 )
Sierra Club Environmental Law Program
85 Second Street, 2nd Floor
San Francisco, CA, 94105
Phone: (415) 977-5769
Fax: (415) 977-5783
Email: Sanjay.narayan@sierraclub.org
*Counsel for Sierra Club*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SIERRA CLUB ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No.  11-1278-PLF |
| ) | |
| LISA P. JACKSON, Administrator ) | |
| U.S. Environmental Protection Agency, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM IN SUPPORT OF MOTION OF PLAINTIFF SIERRA CLUB FOR SUMMARY JUDGMENT

James S. Pew
(D.C. Bar # 448830)
Earthjustice
1625 Massachusetts Avenue, NW
Suite 702
Washington, D.C. 20036
Phone: (202) 667-4500
Fax: (202) 667-2356
Email: jpew@earthjustice.org
*Counsel for Sierra Club*

Sanjay Narayan
(CA Bar # 183227 )
Sierra Club Environmental Law Program
85 Second Street, 2nd Floor
San Francisco, CA, 94105
Phone: (415) 977-5769
Fax: (415) 977-5783
Email: Sanjay.narayan@sierraclub.org
*Counsel for Sierra Club*

DATE: August 3, 2011

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

STATEMENT OF FACTS ................................................................................................. 3

I.    STATUTORY FRAMEWORK ....................................................................................... 3

    A.    The Clean Air Act. ............................................................................................... 3

        1.    Section 112(d)(10) of the Clean Air Act. .................................................... 3

        2.    Section 307 of the Clean Air Act.................................................................. 4

        3.    Section 112(c)(6) of the Clean Air Act. ...................................................... 4

    B.    The Administrative Procedure Act.................................................................... 6

        1.    Section 705 of the APA. ............................................................................... 6

        2.    Section 553 of the APA. ............................................................................... 7

        3.    Section 706 of the APA. ............................................................................... 8

II.    ADMINISTRATIVE AND LITIGATION HISTORY. ....................................... 8

    A.    Litigation History. ............................................................................................... 8

    B.    The Indefinite Stay. ............................................................................................ 9

III.    IMPACTS OF THE INDEFINITE STAY...................................................... 12

ARGUMENT .................................................................................................................... 14

I.    EPA'S INDEFINITE STAY CONTRAVENES THE APA'S NOTICE AND COMMENT REQUIREMENTS.................................................................................... 14

II.    THE AGENCY LACKS THE AUTHORITY TO STAY THE STANDARDS. ................. 15

    A.    Sections 112 and 307 of the Clean Air Act Deprive EPA of its General Authority to Delay the Effective Date of Its Standards................................................................. 15

    B.    The APA Does Not Provide Authority for A Stay....................................... 17

III.    EVEN IF EPA HAD SOME RESIDUAL AUTHORITY TO STAY ITS STANDARDS, IT LACKS THE DISCRETION TO DO SO ON THE GROUNDS PROVIDED...................... 19

IV.    EPA'S INDEFINITE STAY IS ARBITRARY AND CAPRICIOUS.............................. 21

CONCLUSION................................................................................................................. 24

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*ASG Indus. v. Consumer Prod. Safety Comm'n,*
593 F.2d 1323 (D.C. Cir. 1979)..................................................................... 17-18

*Bowen v. Georgetown Univ. Hosp.,*
488 U.S. 204 (1988)........................................................................................17

*Bowen v. Massachusetts,*
487 U.S. 879 (1988)..........................................................................................6

*Burlington N. and Santa Fe Ry. Co. v. STB,*
403 F.3d 771 (D.C. Cir. 2005).......................................................................24

*C.I.R. v. Neal,*
557 F.3d 1262 (11th Cir. 2009) ......................................................................18

*Darby v. Cisneros,*
509 U.S. 137 (1993)..........................................................................................6

*Envtl. Def. Fund v. Gorsuch,*
713 F.2d 802 (D.C. Cir. 1983).......................................................................15

*Fed. Commc'ns Comm'n v. Pottsville Broad. Co.,*
309 U.S. 134 (1940)........................................................................................17

*Greene v. United States,*
79 F.3d 1348 (2d Cir. 1996)....................................................................... 18-19

*Heckler v. Chaney,*
470 U.S. 821 (1985)........................................................................................18

*In re Pub. Serv. Co. of New Hampshire,*
1 E.A.D. 389 (1977)........................................................................................23

*Jicarilla Apache Nation v. DOI,*
613 F.3d 1112 (D.C. Cir. 2010) ................................................................. 23-24

*Liesegang v. Sec'y of Veterans' Affairs,*
312 F.3d 1368 (Fed. Cir. 2002)..................................................................3, 15

*Miller v. French,*
530 U.S. 327 (2000)........................................................................................20

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,*
463 U.S. 27 (1983).................................................................................... 22-23

*NRDC v. Reilly,*
   976 F.2d 36 (D.C. Cir. 1992) ..........................................................16, 18

*NRDC v. EPA,*
   489 F.3d 1250 (D.C. Cir. 2007) .................................................8, 13, 17

*Sierra Club v. Jackson,*
   2011 WL 181097 (D.D.C. 2011) ("*2011 Decision*")....................1-3, 9-11

*Sierra Club v. Johnson,*
   444 F. Supp. 2d 46 (D.C. Cir. 2006) ("*2006 Decision*") .............1, 4, 8, 9

*TRW, Inc. v. Andrews,*
   534 U.S. 19 (2001)...................................................................... 16-17

*Virginia Petroleum Jobbers Ass'n v. FPC,*
   259 F.2d 921 (D.C. Cir. 1958) ...........................................................23

**FEDERAL STATUTES**

<u>Administrative Procedure Act</u>

   5 U.S.C. § 553(b) ............................................................... 7, 14-15

   5 U.S.C. § 553(c) ............................................................... 7, 14-15

   5 U.S.C. §§ 702-706 ..................................................................6

   5 U.S.C. § 705.................................................2, 6, 11, 21, 23

   5 U.S.C. § 706(2) ......................................................................8

   5 U.S.C. § 706(2)(A).................................................................21

   5 U.S.C. § 706(2)(D).................................................................15

<u>Clean Air Act</u>

   42 U.S.C. § 7412, Clean Air Act § 112 .............................3, 15, 20, 21

   42 U.S.C. §§ 7412(a)(1)-(2), Clean Air Act §§ 112(a)(1)-(2) ...................5

   42 U.S.C. § 7412(c)(6), Clean Air Act § 112(c)(6) .................1, 2, 5, 6, 15

   42 U.S.C. §§ 7412(c) & (e), Clean Air Act §§ 112(c) & (e) .....................5

   42 U.S.C. § 7412(d)(1), Clean Air Act § 112(d)(1)............................ 4-5

   42 U.S.C. § 7412(d)(10), Clean Air Act § 112(d)(10)................2, 3, 5, 15

42 U.S.C. § 7412(e)(1)(E), Clean Air Act § 112(e)(1)(E) ....................................................6

42 U.S.C. § 7412(i)(3), Clean Air Act § 112(i)(3) ................................................12, 22

42 U.S.C. § 7429(a)(1)(D), Clean Air Act § 129(a)(1)(D) ...............................6, 13

42 U.S.C. § 7429(f)(2), Clean Air Act § 129(f)(2) ..................................................22

42 U.S.C. § 7429(f)(3), Clean Air Act § 129(f)(3) ..................................................22

42 U.S.C. § 7429(g)(1), Clean Air Act § 129(g)(1) ................................................13

42 U.S.C. § 7521, Clean Air Act § 202 ...................................................................23

42 U.S.C. § 7601, Clean Air Act § 301 ...........................................................16, 18

42 U.S.C. § 7607, Clean Air Act § 307 ...........................................4, 15, 18, 20

42 U.S.C. § 7607(b)(1), Clean Air Act § 307(b)(1) ..................................................4

42 U.S.C. § 7607(d)(1), Clean Air Act § 307(d)(1) ...........................................4, 16

42 U.S.C. § 7607(d)(7)(B), Clean Air Act § 307(d)(7)(B) ..........................2, 4, 10, 15, 16, 19

## LEGISLATIVE HISTORY

Administrative Procedure Act, Pub. L. No. 79-404 (1946) (amended 1966) ...................................6

*Attorney General's Manual on the Administrative Procedure Act*, 93 (1947) ...........................6, 7

Appendix to Attorney General's Statement Regarding Revised Committee Print of
    October 5, 1945, *reprinted in* Administrative Procedure Act, Legislative History, S.
    Comm. on the Judiciary, 79th Cong. 223 (1944-46) ...........................................6, 7

Clean Air Act, Pub. L. No. 91-604, 84 Stat. 1676 (1970) § 112(b)(1)(C).......................................3

S. Rep. No. 101-228 (1989), *as reprinted in* 1989 U.S.C.C.A.N. 3385 .........................................4

S. Rep. No. 89-1380 (1966) ...............................................................................7

## REGULATIONS

40 C.F.R. § 60.2005 ..........................................................................................12

40 C.F.R. § 63.7495(a).................................................................................12, 21

59 Fed. Reg. 43,048 (Aug. 22, 1994).......................................................................7

60 Fed. Reg. 54,949 (Oct. 27, 1995).......................................................................7

70 Fed. Reg. 55,568 (September 22, 2005) ...................................................................................11

75 Fed. Reg. 32,006 (June 4, 2010) ............................................................................................13

75 Fed. Reg. 49,556 (August 13, 2010) ......................................................................................23

76 Fed. Reg. 4,780 (January 26, 2011) ........................................................................................23

76 Fed. Reg. 15,266 (March 21, 2011) ..........................................................................................9

76 Fed. Reg. 15,608 (March 21, 2011) ........................................................................... 8, 13-14

76 Fed. Reg. 15,704 (March 21, 2011) ...................................................................... 8, 13-14, 22

76 Fed. Reg. 28,662 (May 18, 2011) .........................................................2-3, 10-12, 14, 19, 21-22

**INTRODUCTION**

Section 112 of the Clean Air Act required EPA, by November 15, 2000, to issue

protective emission standards for sources accounting for ninety percent of the aggregate

emissions of certain especially dangerous hazardous air pollutants.  42 U.S.C. § 7412(c)(6).  In a

deadline suit brought by the Sierra Club, this Court ordered EPA to issue the overdue rules

necessary to meet this statutory requirement no later than January 21, 2011. *Sierra Club v.*

*Jackson*, 2011 WL 181097 (D.D.C. 2011) ("*2011 Decision*") at *1-2 (*citing Sierra Club v.*

*Johnson*, 444 F. Supp. 2d 46 (D.C. Cir. 2006) ("*2006 Decision*").  These required rules included

"standards for (1) certain area source boilers, (2) major source boilers, and (3) commercial and

industrial solid waste incineration (CISWI) units (collectively, 'the Three Air Rules')." *2011*

*Decision*, at *4.

Six weeks before the Court's January 21, 2011 deadline, EPA sought to delay issuance of

the Three Air Rules by another fifteen months, to April 13, 2012. *2011 Decision* at *5. EPA

advanced three arguments for that delay: (1) EPA desired additional time to address "new

information and data," *id.* at *8; (2) "certain changes to the proposed rule could make additional

notice and public comment advisable," *id.*;  and (3) the rules "affect almost 200,000 boilers and

176 CISWI units across the United States, and are complex and inter-related," *id.* at *10.  This

Court "denie[d] EPA's request for an extension of time until April 13, 2012 so that the EPA can

re-propose the Three Air Rules."  *Id.* at *11.  Holding "[i]t is emphatically not within an

agency's authority to set regulatory priorities that clearly conflict with those established by

Congress" and noting that EPA's own papers indicated that "its requested extensions would not

reflect a schedule of 'utmost diligence,'" the Court ordered EPA to issue the overdue rules by

February 21, 2011.  *Id.* at *14.

1

On February 21, 2011, EPA signed the Three Air Rules. Before the rules could become operative, however, EPA issued "final rules" indefinitely "postponing [the] effectiveness" of two of the rules: those governing major source boilers ("Industrial Boilers Rule") and CISWI units ("CISWI Rule"). 76 Fed. Reg. 28,662, 28,663 (May 18, 2011) ("Indefinite Stay"). To justify this action, EPA proffered the same three arguments this Court had rejected just four months earlier: (1) EPA "believe[s] the public did not have a sufficient opportunity to comment on certain revisions EPA made to the proposed rules"; (2) "EPA received data before finalizing both rules but was unable to incorporate that data into the final rules"; and (3) the rules would affect "thousands of facilities across multiple, diverse industries." *Id. Cf. 2011 Decision* at *8-10. Despite this Court's holding that the agency "emphatically" lacked the authority under the Clean Air Act to bypass those deadlines, EPA asserted such authority under the general provisions of the Administrative Procedure Act ("APA"), 5 U.S.C. § 705. And despite this Court's finding that it could, with diligence, complete legally adequate rules by the specified deadline, the Agency claimed that it was "unable to incorporate [all the necessary] data into the final rules given [this Court's] deadline." 76 Fed. Reg. at 28,663.

EPA has exceeded its authority. Although the APA memorializes agencies' general discretion over the timing of agency actions, 5 U.S.C. § 705, Congress eliminated that discretion with respect to rules issued under Clean Air Act § 112 by enacting § 112(c)(6), which established a November 15, 2000 deadline for the rules at issue; § 112(d)(10), which provides that all "standards . . . promulgated under this subsection shall be effective upon promulgation"; and § 307(d)(7)(B), which limits stays of § 112 rules to ninety days pending reconsideration. 42 U.S.C. §§ 7412(c)(6), (d)(10); § 7607(d)(7)(B). Even if that statutory limitation on EPA's general authority could be overlooked, moreover, EPA did not follow the notice and comment

procedures required by the APA and failed to articulate a rational basis for concluding that

"justice" required a stay in the present circumstances.

Sierra Club seeks summary judgment vacating the Indefinite Stay.[1]

## STATEMENT OF FACTS[2]

**I.   STATUTORY FRAMEWORK.**

**A.   The Clean Air Act.**

**1.   Section 112(d)(10) of the Clean Air Act.**

Section 112 of the Act governs hazardous air pollutants.  42 U.S.C. § 7412.  *See 2011*

*Decision* at *1.  Congress included, in § 112, provisions specifying the date on which § 112

standards become effective. "Emission standards or other regulations promulgated under this

subsection shall be effective upon promulgation."  42 U.S.C. § 7412(d)(10).[3]  *See* Clean Air Act,

Pub. L. No. 91-604, 84 Stat. 1676 (1970) § 112(b)(1)(C).

---

[1]  Sierra Club has also submitted a motion seeking to enforce the Court's January 21 order in *Sierra Club v. Jackson,* No. 01-1537.  That motion asks that, if the Court does not vacate the Indefinite Stay in the present case, it order EPA to vacate the Indefinite Stay. Sierra Club has also moved to consolidate this case with Case No.01-1537, and to have the two motions briefed and argued on a single, expedited, schedule.  Further, although Sierra Club believes that this Court is the correct forum for a review of the Indefinite Stay, which EPA promulgated "pursuant to section 705 of the APA" rather than the Clean Air Act, 76 Fed. Reg. at 28,664/1, Sierra Club has, as a precaution, filed a petition for review of the Indefinite Stay in the D.C. Circuit.  *Sierra Club v. EPA*¸ D.C. Cir. No. 11-1263.  Sierra Club intends to move to hold the D.C. Circuit case in abeyance pending this Court's decision on summary judgment.

[2]  Because the present case is one in which "judicial review is based solely on the administrative record," Local Rule 7(h)(2), this memorandum provides a statement of facts citing to the administrative record (such as it exists) and plaintiffs have not submitted a statement of material facts as to which there is no dispute pursuant to Local Rule 7(h)(1).

[3]  The Congressional Review Act provides a 60-day delay before § 112, or any other, regulations become "operative"; it does not, however, alter this specification of § 112 standards' effective date. *Liesegang v. Sec'y of Veterans' Affairs,* 312 F.3d 1368, 1374-75 (Fed. Cir. 2002).

### 2.      Section 307 of the Clean Air Act.

In 1977 Congress added to the Act specific procedures for agency and judicial review of,

*inter alia,* EPA's air toxics standards.  42 U.S.C. § 7607.[4] Among those procedures, § 307 of the

Act allows EPA to "convene a proceeding for reconsideration of [a] rule," including § 112

standards, but provides that "[s]uch reconsideration shall not postpone the effectiveness of the

rule," except that "[t]he effectiveness of the rule may be stayed during such reconsideration . . .

by [EPA] or the court for a period not to exceed three months."  42 U.S.C. § 7607(d)(7)(B).  *See*

*also* 42 U.S.C. § 7607(b)(1) ("The filing of a petition for reconsideration by the Administrator of

any otherwise final rule or action shall not affect the finality of such rule or action for purposes

of judicial review . . . and shall not postpone the effectiveness of such rule or action.").

### 3.      Section 112(c)(6) of the Clean Air Act.

In 1990, Congress comprehensively restructured § 112, as a result of its frustration with

EPA's (and states') "record of false starts and failed opportunities" in regulating air toxics, and

Congress's conclusion that EPA had "not made sufficient use of the existing authorities available

under [the prior version of the law] to protect public health."  S. Rep. No. 101-228, at 113-14

(1989), *as reprinted in* 1989 U.S.C.C.A.N. 3385, 3517.  *See 2006 Decision*, 444 F. Supp. 2d at

48.  Congress included, among the "fundamental changes" it made to § 112 in 1990, "a

mandatory schedule for issuing emissions standards for the major sources of [hazardous air

pollutants]."  S. Rep. No. 101-228, at 114 (1989), *as reprinted in* 1989 U.S.C.C.A.N. 3385,

3517.  The amended Clean Air Act provided specific deadlines for the promulgation of EPA's

---

[4] Congress also provided specific rule-making procedures, which expressly supersede those of the APA for certain rulemakings.  42 U.S.C. § 7607(d)(1) ("The provisions of sections 553 through 557 and section 706 of Title 5 shall not, except as expressly provided in this subsection, apply to actions to which this subsection applies.").  *See also* 42 U.S.C. § 7607(d)(1) (listing rulemakings to which § 307(d) applies).

national emission standards for hazardous air pollutants ("air toxics standards").  42 U.S.C. §

7412(d)(1) ("The Administrator shall promulgate regulations establishing emission standards . . .

in accordance with the schedules provided in subsections (c) and (e) of this section.").  *See also*

42 U.S.C. §§ 7412(c) & (e) (setting out specific deadlines).  Congress retained § 112(d)(10)'s

command that these standards "be effective upon promulgation."  42 U.S.C. § 7412(d)(10).

Also among the new provisions in the Clean Air Act Amendments of 1990 was

§ 112(c)(6), which provides extra protection against some of the most dangerous hazardous air

pollutants: mercury, dioxins, polychlorinated biphenyls (PCBs), polycyclic organic matter

(POM), hexachlorobenzene, and lead.  42 U.S.C. § 7412(c)(6).  These pollutants can cause

cancer, birth defects, and similarly catastrophic damage to human health even in tiny quantities,

and are known to persist in the environment and to bioaccumulate in food sources and wildlife.

Accordingly, although the Clean Air Act generally requires EPA to issue highly protective

"maximum achievable control technology" (MACT) standards only for "major sources" of other

hazardous air pollutants, it requires EPA to "assur[e]" that sources accounting for ninety percent

of the § 112(c)(6) pollutants are subject to MACT standards regardless of whether they are

"major."  42 U.S.C. § 7412(c)(6).[5]  Section 112(c)(6) required EPA to list the categories of

sources accounting for ninety percent of the enumerated pollutants by November 15, 1995 and to

---

[5] The Clean Air Act defines a "major source" as any source with the potential to emit ten tons
per year of any single hazardous air pollutant or twenty-five tons per year of any combination of
hazardous air pollutants, and refers to any source that is not "major" as an "area source."  42
U.S.C. §§ 7412(a)(1)-(2).

complete its MACT standards for all of these categories by November 15, 2000 – more than a

decade ago.  42 U.S.C. § 7412(c)(6).[6]

**B.       The Administrative Procedure Act.**

**1.       Section 705 of the APA.**

Congress provided, in § 10 of the APA (later re-codified at 5 U.S.C. §§ 702-706), a

"general authorization for review of agency action in the district courts."  *Bowen v.*

*Massachusetts,* 487 U.S. 879, 903 (1988).  As Attorney General Clark noted following the Act's

adoption, those review provisions "deal[] largely with principles," and were intended to "leave[]

the mechanics of judicial review to be governed by other statutes and by judicial rules," so that

"the general principles stated in section 10 must be carefully coordinated with existing statutory

provisions and case law."  *Attorney General's Manual on the Administrative Procedure Act*  93

(1947).  *See Darby v. Cisneros,* 509 U.S. 137, 148 n.10 (1993) (noting deference accorded

Attorney General Clark's interpretation of APA).

Congress included, in the Act, the following provision:

> When an agency finds that justice so requires, it may postpone the effective date of action
> taken by it, pending judicial review. On such conditions as may be required and to the
> extent necessary to prevent irreparable injury, the reviewing court . . . may issue all
> necessary and appropriate process to postpone the effective date of an agency action or to
> preserve status or rights pending conclusion of the review proceedings.

5 U.S.C. § 705.[7]  The first sentence of that section (allowing an agency to "postpone the effective

date of action taken by it, pending judicial review") was not intended to provide federal agencies

---

[6] EPA's Industrial Boilers Rule was also subject to the November 15, 2000 deadline in 42 U.S.C.
§ 7412(e)(1)(E), and the agency's CISWI Rule was subject to a November 15, 1994 deadline in
42 U.S.C. § 7429(a)(1)(D).

[7]  The first line of the section originally read "Pending judicial review any agency is authorized,
where it finds that justice so requires, to postpone the effective date of any action taken by it."
Administrative Procedure Act, Pub. L. No. 79-404 (1946) (prior to 1966 amendment).  Congress
footnote continued on next page…

with any additional authority; rather, "the first sentence [of § 705] states existing law." Appendix to Attorney General's Statement Regarding Revised Committee Print of October 5, 1945, *reprinted in* Administrative Procedure Act, Legislative History, S. Comm. on the Judiciary, 79th Cong. 223 (1944-46); *see id.* at 38 ("The first sentence merely confirms administrative authority to grant a stay."); *Attorney General's Manual on the Administrative Procedure Act*, 93 ("The first sentence of the subsection [was] a restatement of existing law."). Congress's intent was, rather, to give courts the power to stay agency decisions.  *Id.*

EPA has, in the past, invoked § 705 even in the absence of proceedings for judicial review or any other meaningful tether to text of § 705.  E.g. 2,2-Dibromo-3-nitrilopropionamide; Toxic Chemical Release Reporting; Community Right-to-Know; Stay of Reporting Requirements, 60 Fed. Reg. 54,949, 54,952 (Oct. 27, 1995); Hydrogen Sulfide; Methyl Mercaptan; Toxic Chemical Release Reporting; Community Right-to-Know; Stay of Reporting Requirements, 59 Fed. Reg. 43,048, 43,050 (Aug. 22, 1994).  By that generalized, non-statutory use, the agency has recognized that § 705 refers to its general, non-statutory authority over its own actions and not some specific grant of statutory authority triggered by the existence of "judicial review."

## 2.    Section 553 of the APA.

Section 553 of the APA provides: "General notice of proposed rule making shall be published in the Federal Register, unless persons subject thereto are named and either personally served or otherwise have actual notice thereof in accordance with law."  5 U.S.C. § 553(b).  It further states: "After notice required by this section, the agency shall give interested persons an

---

…footnote continued from previous page
reorganized the APA in 1966, slightly altering that sentence. Congress did not, by that change in wording, make or intend any alteration to the substance of the Act.  *See* S. Rep. No. 89-1380, at 18-19 (1966).

opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation." *Id.* § 553(c).

### 3.    Section 706 of the APA.

Finally, the APA provides that a court reviewing agency action under the APA "shall hold unlawful and set aside agency action, findings, and conclusions found to be – (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law…." 5 U.S.C. § 706(2).

## II.    ADMINISTRATIVE AND LITIGATION HISTORY.

## A.    Litigation History.

Sierra Club brought suit to compel EPA to meet its § 112(c)(6) obligations after the agency missed the statute's November 15, 2000 deadline.  *2006 Decision*, 444 F. Supp.2d at 47-49.  Unable to resolve the issue, both parties sought summary judgment.  *Id.* at 51-52.  Rejecting EPA's claim that it should be given until 2012 to complete these obligations, "as well as defendant's argument that anything faster would yield substantively or procedurally deficient rules," the Court ordered EPA to complete its § 112(c)(6) rules by December 15, 2007.  *Id.* at 56, 61.  EPA agrees that to satisfy § 112(c)(6) it must issue MACT standards for Industrial Boilers and CISWI.  *See, e.g.,* 76 Fed. Reg. 15608, 15,653-15,654 (March 21, 2011); 76 Fed. Reg. 15,704, 15,717 (March 21, 2011).

Although EPA initially promulgated rules for Industrial Boilers and CISWI in 2004 and 2000 respectively, both rules were unlawful.  *See NRDC v. EPA*, 489 F.3d 1250, 1253-1254 (D.C. Cir. 2007).  Without these rules, EPA concluded that it could not meet the December, 15,

2007 deadline for completing its § 112(c)(6) obligations. With Sierra Club's consent, EPA sought and obtained extensions of that deadline – ultimately receiving an extension of more than three years from December 15, 2007 to January 21, 2011. *2011 Decision*, at *4.

In December 2010, EPA again moved to extend the deadline, this time by approximately fifteen months, from January 21, 2010 to April 13, 2012. *Id.* at *5. EPA did not claim that it was impossible to meet the January 21, 2011 deadline or that rules issued by that date would be defective in any way. *See id.* at *10 ("EPA itself has not actually asserted that its proposed rules are flawed or inadequate."). Instead, the agency stated that it wished to provide opportunity for further notice and comment on aspects of these rules that might differ significantly from the proposed rules EPA had issued in 2010. Specifically, EPA stated: (1) "certain changes to the proposed rule" made additional notice and public comment advisable; (2) EPA desired additional time to address "new information and data" and (3) the rules "affect almost 200,000 boilers and 176 CISWI units across the United States, and are complex and inter-related." *2011 Decision* at *8, *10. Sierra Club objected. This Court denied EPA's motion, holding that "[i]t is emphatically not within an agency's authority to set regulatory priorities that clearly conflict with those established by Congress." [Jan. 20 order] at 19. The Court ordered EPA to promulgate the overdue emission standards by February 21, 2011. *2011 Decision* at *14. *Cf. 2006 Decision*, 444 F. Supp. 2d at 56 (rejecting EPA's request that the § 112(c)(6) deadline be extended to 2012).

## B.    The Indefinite Stay.

EPA signed the Industrial Boilers and CISWI Rules on February 21, 2011. It waited one month to publish those rules in the Federal Register; at the same time, EPA took the unusual step of initiating its own reconsideration proceedings. 76 Fed. Reg. 15,266 (March 21, 2011). Both

9

rules were challenged in the D.C. Circuit by industry groups as well as Sierra Club and other environmental groups. *See U.S. Sugar Corp. v. EPA*, D.C. Cir. No. 11-1108 (Industrial Boilers); *Am. Forest & Paper v. EPA*, D.C. Cir. No. 11-1125 (CISWI).

On May 18, 2011, less than two months later (and before the rules became operative, *see* n.2 above), EPA issued the Indefinite Stay, depriving the Industrial Boilers and CISWI Rules of effect "until the proceedings for judicial review of these rules are complete or the EPA completes its reconsideration of the rules, whichever is earlier." 76 Fed. Reg. at 28,662/3, 28,664/1.  EPA then moved to stay the judicial review of its Industrial Boilers and CISWI Rules pending its own reconsideration proceedings.  Respondent's Motion To Hold Case In Abeyance, *U.S. Sugar v. EPA*, D.C. Cir. No. 11-1108; Respondent's Motion To Hold Case In Abeyance, *Am. Forest & Paper v. EPA*, D.C. Cir. No. 11-1125,  (Ex. A hereto).  If these motions are granted, EPA's stay of the Industrial Boilers and CISWI Rules will remain in place until the agency chooses to conclude its reconsideration process, no matter how long that reconsideration lasts. *Cf.* 42 U.S.C. § 7607(d)(7)(B) (authorizing EPA to stay rules for only "three months" pending reconsideration).

EPA based the Indefinite Stay upon the same arguments the agency advanced before this Court: (a) EPA "believe[s] the public did not have a sufficient opportunity to comment on certain revisions EPA made to the proposed rules"; (b) "EPA received data before finalizing both rules but was unable to incorporate that data into the final rules"; and (c) the rules would affect "thousands of facilities across multiple, diverse industries." *Id.* at 28,663. *Cf. 2011 Decision* at *8, *10.  Further, EPA states that it does not intend to complete its reconsideration and lift the Indefinite Stay until April 30, 2012 – essentially the same 15-month delay that this Court refused

10

to provide the previous January.  *Compare* Respondent's Motion To Hold Case In Abeyance,

*U.S. Sugar v. EPA*, D.C. Cir. No. 11-1108, Ex. A at 1-2 *with 2011 Decision* at *5.

By staying the effective date of the Industrial Boilers and CISWI Rules pending litigation

and then having the litigation held in abeyance pending its own administrative reconsideration

proceedings, EPA has completely deprived both rules of effect for an indefinite period of time.

The stay will end only when EPA – now unconstrained by either the statutory deadlines in Clean

Air Act § 112 or this Court's remedial deadlines – chooses to bring its reconsideration to a close.

EPA's reconsideration proceedings are not subject to a statutory deadline, a court-ordered

deadline, or any other enforceable schedule.  Although EPA has stated that it "intends" to

complete reconsideration proceedings by April 30, 2012, *see supra* at 11, the agency has not

made an enforceable commitment to do so.  EPA has repeatedly allowed its reconsideration of

Clean Air Act rules – which are not subject to deadlines of any kind – to drag on for three years

or more.[8]

EPA states that it is issuing the Indefinite Stay not under the Clean Air Act but rather

under the APA, 5 U.S.C. § 705.  76 Fed. Reg. at 28,663.  The agency claims that the limits

imposed by the Clean Air Act upon its ability to stay the effectiveness of § 112 rules do not

prevent it from staying such rules indefinitely pending *litigation*. EPA characterizes the stay as

one "pending litigation," even though the agency's rationale for the stay is entirely based on its

decision to commence *reconsideration* proceedings, and even though the stay will operate until

EPA completes those proceedings.  According to the agency, the APA allows it to stay the

---

[8] For example, EPA granted reconsideration of certain aspects of its initial CISWI rule on August
17, 2001 and did not issue a final reconsideration decision until September 22, 2005.  *Compare*
August 17, 2001 Letter from Seitz to Pew, Ex. B hereto, *with* 70 Fed. Reg. 55,568 (September
22, 2005).

Industrial Boiler and CISWI rules based solely upon its determination that "justice" so requires. *Id.* at 28,663.

### III.    IMPACTS OF THE INDEFINITE STAY.

Because the compliance date for new Industrial Boilers is May 20, 2011, EPA's stay relieves these sources of pollution control requirements that would otherwise apply. *See* 40 C.F.R. § 63.7495(a) (new boilers).[9] For existing industrial boilers, the compliance date is March 21, 2014. *Id.* at § 63.7495(b). The Indefinite Stay's stated purpose is to prevent companies from having to make the "compliance investments" necessary to reduce their emissions to meet the standards by that date. 76 Fed. Reg. at 28,663. It is by no means certain that EPA will lift the Indefinite Stay by April 12, 2012 (the date the agency states it "intends" to do so, Ex. A at 1-2) or even March 21, 2014 (the compliance date for existing sources); if the agency delays past March 21, 2014, existing sources will be directly relieved of the obligation to comply with the emission standards until such time as EPA ends its reconsideration, and lifts the stay. And because the Indefinite Stay introduces uncertainty as to when (if ever) existing sources will need to comply, even a shorter delay increases the likelihood that sources will not make compliance investments and, as a practical matter, will not be prepared to meet the promulgated standards by March 21, 2014. *See* 42 U.S.C. § 7412(i)(3)(B) (authorizing States or EPA to extend compliance deadlines for up to one year on a case by case basis where necessary for the installation of controls).

---

[9] Standards for new CISWI would take effect, absent the Indefinite Stay, on September 21, 2011. 40 C.F.R. § 60.2005.

In issuing the Indefinite Stay, the Agency did not address the effects of the impacts of the Indefinite Stay on people who are exposed to pollution from Industrial Boilers and CISWI, or explain how it considered such impacts in determining that "justice" required the stay. The Industrial Boilers Rule covers more than 13,000 boilers and process heaters that are used to generate heat and power at facilities such as chemical plants, refineries, and paper mills that are "major sources" of hazardous air pollutants.  EPA, Fact Sheet, Final Air Toxics Standards For Industrial, Commercial, And Institutional Boilers And Process Heaters At Major Source Facilities (2011) ("Boilers Fact Sheet"), Ex. C at 2; 76 Fed. Reg. at 15,608-15,609 ("examples of potentially regulated entities").  If the Industrial Boilers Rule were allowed to take effect, it would reduce emissions of hazardous air pollutants "by 40,000 tons per year for existing units and 60 tons per year for new units."  76 Fed. Reg. at 15,649/2.

The CISWI Rule covers only eighty-eight commercial and industrial solid waste incinerators, but would nonetheless reduce emissions of toxic metals such as lead and mercury by more than five tons per year, particulate matter by 1,600 tons per year, acid gases including hydrogen chloride and sulfur dioxide by 5,700 tons per year, oxides of nitrogen (NOx) by 5,700 tons per year, and carbon monoxide by 23,000 tons per year.  EPA, Fact Sheet, Final Amendments To New Source Performance Standards And Emission Guidelines For Commercial and Industrial Solid Waste Incineration Units (2011) ("CISWI Fact Sheet"), Ex. D at 1-2. [10]

The pollutants emitted by Industrial Boilers and CISWI cause a wide variety of serious adverse health effects, including cancer.  *See, e.g.*, 75 Fed. Reg. 32,006, 32,011 (June 4, 2010).

---

[10] A solid waste incineration unit is "any facility which combusts any solid waste material from commercial or industrial establishments or the general public."  42 U.S.C. § 7429(g)(1).  *See NRDC,* 489 F.3d at 1257-58 (D.C. Cir. 2007).  A CISWI unit is one that combusts commercial or industrial solid waste.  42 U.S.C. § 7429(a)(1)(D).

Despite the health threat posed by emissions of hazardous air pollutants such as mercury, lead, and dioxins, EPA did not attempt to calculate the health benefits of the substantial reductions in these emissions that the Industrial Boilers and CISWI rules would provide.  *See* 76 Fed. Reg. at 15,653 (Industrial Boilers); 76 Fed. Reg. at 15,745 (CISWI).  EPA did, however, calculate the health benefits of reducing the fine particulate matter emissions from these facilities.  Each year, the Industrial Boilers Rule would prevent:

- 2,500 to 6,500 premature deaths,
- 1,600 cases of chronic bronchitis,
- 4,000 non-fatal heart attacks,
- 4,300 hospital and emergency room visits,
- 3,700 cases of acute bronchitis,
- 78,000 cases of respiratory symptoms,
- 310,000 days when people miss work or school,
- 41,000 cases of aggravated asthma, and
- 1,900,000 days when people must restrict their activities.

Boilers Fact Sheet, Ex. C at 2-3.  Each year, the CISWI Rule would prevent an additional:

- 40 to 100 premature deaths,
- 27 cases of chronic bronchitis,
- 64 non-fatal heart attacks,
- 68 hospital and emergency room visits,
- 65 cases of acute bronchitis,
- 1,350 cases of respiratory symptoms,
- 5,300 days when people miss work or school,
- 700 cases of aggravated asthma, and
- 31,000 days when people must restrict their activities.

CISWI Fact Sheet, Ex. D at 2.

## ARGUMENT

## I.   EPA'S INDEFINITE STAY CONTRAVENES THE APA'S NOTICE AND COMMENT REQUIREMENTS.

EPA states that the Indefinite Stay is a final rule issued "under the authority of" the APA.

76 Fed. Reg. at 28,662/3,  28,664.  APA § 553 unambiguously requires that "[g]eneral notice of

proposed rule making shall be published in the Federal Register" and that "[a]fter notice required

by this section, the agency shall give interested persons an opportunity to participate in the rule

making through submissions of written data, views, or arguments."  5 U.S.C. §§ 553(b), (c).  It

further provides that "[a]fter consideration of the relevant matter presented, the agency shall

incorporate in the rules adopted a concise general statement of their basis and purpose."  *Id.* at

§ 553(c).  Because EPA promulgated its Indefinite Stay without meeting any of these statutory

requirements, the Indefinite Stay contravenes the APA and must be vacated.  5 U.S.C.

§ 706(2)(D); *see also Envtl. Def. Fund v. Gorsuch*, 713 F.2d 802, 818 (D.C. Cir. 1983).

## II.      THE AGENCY LACKS THE AUTHORITY TO STAY THE STANDARDS.

### A.      Sections 112 and 307 of the Clean Air Act Deprive EPA of its General Authority to Delay the Effective Date of Its Standards.

The Clean Air Act provides a comprehensive framework, specifying when EPA must

promulgate the standards required by § 112(c)(6), 42 U.S.C. § 7412(c)(6), when § 112 standards

become effective, 42 U.S.C. § 7412(d)(10), the grounds upon which EPA may stay their

effectiveness, 42 U.S.C. § 7607(d)(7)(B), and the maximum duration of any such stay, *id.*

Section 112(c)(6) required EPA to promulgate all standards necessary to meet its ninety percent

requirement by November 15, 2000.  42 U.S.C. § 7412(c)(6).  Section 112(d)(10) states, without

exception or qualification: "Emission standards or other regulations promulgated under this

subsection *shall be effective* upon promulgation." 42 U.S.C § 7412(d)(10) (emphasis added).

That language deprives EPA of any discretion to delay the effective date of § 112 standards.

Where "Congress unambiguously address[es] [the issue] . . . by decreeing that '. . . regulations

shall be effective on the date of issuance,'" the responsible agency "has no choice but to give

effect to Congress's clear intent." *Liesegang,* 312 F.3d at 1373.

Section 307 sets out the specific circumstances under which EPA may issue a stay of any § 112 standard and the maximum duration of such a stay: "[t]he effectiveness of [a] rule may be stayed during [proceedings for] reconsideration, however, by the Administrator or the court for a period not to exceed three months."  42 U.S.C. § 7607(d)(7)(B).  *See* 42 U.S.C. § 7607(d)(1) (§ 307(d) applies to § 112 and § 129 rules).  As the D.C. Circuit has held, by that provision, Congress "permitted a stay only under carefully defined circumstances; and even then, it did so for a single period not to exceed three months."  *Natural Res. Def. Council v. Reilly*, 976 F.2d 36, 40 (D.C. Cir. 1992).

In *Reilly*, EPA sought  to stay the effective date of radionuclide standards required under § 112, invoking both authority specific to radionuclides that it purported to find in the Clean Air Act Amendments of 1990, *id.* and its general rulemaking authority under Clean Air Act § 301. *Id.* at 41.  The Circuit rejected both arguments, holding without exception that "EPA [has] *no authority* to stay the effectiveness of a promulgated [§ 112] standard except for the single, three-month period authorized by § 307(d)(7)(B) of the [Act]." *Id.* (emphasis added).  Although that broad holding is dispositive in the present case, it also bears emphasis that the § 705 argument EPA advances here is essentially the same as the § 301 argument EPA presented in *Reilly*: that the agency has general authority which trumps § 112 deadline provisions.  Indeed, as shown above, EPA treats § 705 as a general authority provision by using it to stay rules with or without litigation, just as it formerly claimed it could use Clean Air Act § 301.  *See supra* at 7-8.  The D.C. Circuit's reasoning in *Reilly* – that EPA lacks any general authority to stay regulations that are subject to § 112 deadlines – applies equally to the stay at issue here.  *Id.*

Even if *Reilly* did not exist, § 307(d)(7)(B) confirms that the stay challenged here is unlawful.  It is well established that "[w]here Congress explicitly enumerates certain exceptions

to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent." *TRW, Inc. v. Andrews*, 534 U.S. 19, 28 (2001).  Here, Congress's decision to provide only one carefully tailored exception to § 112(d)(10)'s mandate that § 112 standards be effective "upon promulgation" – § 307(d)(7)(B)'s provision for a one-time stay pending reconsideration for a period not to exceed "three months" – makes plain that Congress did not intend to authorize other stays.  *TRW*, 534 U.S. at 28; *see also NRDC*, 489 F.3d at 1259 ("if statute 'details the conditions in which EPA may extend the attainment deadline' '[w]e cannot but infer from the presence of these specific exemptions that the absence of any other exemption for the transport of ozone was deliberate, and that the Agency's attempt to grant such a dispensation is contrary to the intent of Congress.'") (*quoting Sierra Club v. EPA*, 294 F.3d 155, 160 (D.C. Cir. 2002)).

**B.      The APA Does Not Provide Authority for A Stay.**

APA § 705 does not authorize EPA to ignore the Clean Air Act's unambiguous limits on the agency's discretion to stay rules. That section merely memorializes administrative agencies' general discretion to define effective dates according to their view of "justice."  *Id; see generally Fed. Commc'ns Comm'n v. Pottsville Broad. Co.*, 309 U.S. 134, 143 (1940)(noting that administrative agencies are generally "free to fashion their own rules of procedure and to pursue methods of inquiry capable of permitting them to discharge their multitudinous duties").  That is precisely the discretion that Congress removed with respect to EPA's actions under Clean Air Act § 112 by enacting § 112(c)(6), § 112(d)(10) and § 307(d)(7)(B).

As the Attorney General's Manual makes clear, the portion of § 705 noting agencies' ability to postpone the effective dates of their rules was enacted merely as "a restatement of existing law." *Attorney General's Manual on the Administrative Procedure Act*  93. *See Bowen v.*

17

*Georgetown Univ. Hosp.,* 488 U.S. 204, 218 (1988) (noting that the Attorney General's Manual is "the Government's own most authoritative interpretation of the APA," and that Courts have "repeatedly given great weight" to it).  Accordingly, under the APA "[i]n an appropriate case, an agency may defer the effective date of a regulation just as a court may defer the effective date of a decree enjoining a nuisance." *ASG Indus. v. Consumer Prod. Safety Comm'n,* 593 F.2d 1323, 1335 (D.C. Cir. 1979).  Where a statute constrains that discretion, however, the agency must obey the statute. *Id.* (where statute imposes specific conditions to postpone effective date, agency must comply with those conditions); *see also Heckler v. Chaney,* 470 U.S. 821, 832-33 (1985) (APA does not "set agencies free to disregard legislative direction in the statutory scheme that the agency administers"); *C.I.R. v. Neal,* 557 F.3d 1262, 1273 (11th Cir. 2009) ("[A]s a statute of general application, the APA does not supersede specific statutory provisions for judicial review." (holding that APA record review procedures do not apply, where specific statutory scheme provides for de novo review)).

The general APA authority relied upon by EPA here is, for these purposes, no different from the "general grant of rulemaking power" provided by § 301 of the Clean Air Act.  As the D.C. Circuit established in *Reilly,* § 301 does not provide EPA with the "open-ended power" to ignore Congress' commands regarding the effectiveness of § 112 standards, or the limitations on stays imposed by § 307.  *Reilly,* 976 F.2d at 41[11].  Likewise, the general powers recognized by § 705 of the APA do not provide EPA with the power to ignore those commands. *See id.* at 37

---

[11]  EPA cited § 705 of APA as an additional source of its "general" authority to stay the standards at issue in *Reilly.* 976 F.2d at 39. When challenged, however, it relied only on the Clean Air Act  as purportedly providing it such authority. *Id.* at 40.

(EPA "has no general authority to suspend [its] standards" where § 112 provides that they shall be effective).[12]

### III. EVEN IF EPA HAD SOME RESIDUAL AUTHORITY TO STAY ITS STANDARDS, IT LACKS THE DISCRETION TO DO SO ON THE GROUNDS PROVIDED.

Even if the Act leaves EPA the discretion to stay its § 112 standards under some circumstances beyond those specified in the Act, it did not provide EPA the ability to issue the indefinite stay on the basis that EPA has provided here. The agency provides the following circumstances to justify its stay:

> EPA has identified several issues in the final rules which it intends to reconsider because we believe the public did not have a sufficient opportunity to comment on certain revisions EPA made to the proposed rules. . . . [D]iverse industries will need to begin to make major compliance investments soon . . . [which] may not be reversible if the standards are in fact revised following reconsideration.

76 Fed. Reg. at 28,663.

These are *exactly* the circumstances under which Congress constrained EPA's ability to stay its standards: the agency's decision to entertain a "proceeding for reconsideration of [its] rule." 42 U.S.C. § 7607(d)(7)(B).  The effect of EPA's stay is likewise identical to the stay limited by § 307(d)(7)(B).  EPA has stayed the standards "until the proceedings for judicial review of [the] rules are complete *or the EPA completes reconsideration of the rules*, whichever is earlier." 76 Fed. Reg. at 28,664 (emphasis added).  But EPA has simultaneously sought to stay "the

---

[12]  There is no conflict between the Clean Air Act and the APA. The APA notes EPA's general discretion; the Clean Air Act (and numerous other statutes) constrain that discretion. *See Reilly,* 976 F.2d at 41 (resolving § 112 requirements with provisions providing general authority). If such a conflict existed, however, the Clean Air Act would necessarily prevail. *Greene v. United States,* 79 F.3d 1348, 1356 (2d Cir. 1996) ("When two statutes are in conflict, that statute which addresses the matter at issue in specific terms controls over a statute which addresses the issue in general terms, unless Congress has manifested a contrary aim.").

proceedings for judicial review" until the reconsideration is complete. As a result, those proceedings *cannot* be "complete" before "EPA completes reconsideration of its rules." *Id.* EPA's stay is, in its function as well as its stated rationale, indistinguishable from a stay pending reconsideration.

Despite its lip-service to "judicial review," EPA has thus stayed "the effectiveness of [a] rule during [its] reconsideration." 42 U.S.C. § 7607(d)(7)(B). That has two ramifications. First, the Clean Air Act specifically addresses, and constrains, stays pending *reconsideration*. EPA cannot ignore those constraints, merely by re-labeling the Indefinite Stay in a manner that contradicts both its purpose and function. Congress provided, in the Clean Air Act, conditions governing a stay pending reconsideration; even courts lack the authority to contradict such conditions. *Miller v. French,* 530 U.S. 327, 337-338 (2000). Second, and conversely, whatever authority § 705 of the APA provides to stay rules "pending litigation," that authority does not apply here – because the Indefinite Stay is not, in its rationale or function, a stay pending *litigation*. EPA's stated rationales for the Indefinite Stay are unrelated to the existence or consequences of litigation; EPA's notice suggests nothing related to the litigation to justify its stay. Its motions to hold the litigation in abeyance suggest precisely the opposite. And as a result of those motions, the Indefinite Stay will not function as a stay pending litigation. It will not be terminated by the conclusion of litigation; its existence depends, instead, upon EPA's reconsideration proceedings.

The interpretation of the APA advanced by the agency here would eviscerate the limits imposed by Congress in §§ 112 and 307 of the Act. EPA could defeat any statutory or court-ordered deadline in the same manner that it has done so here; find that "justice" requires delay pending its litigation, while ensuring that litigation is held in abeyance for as long as the Agency

20

sees fit to conduct its own reconsideration proceedings. Neither the Clean Air Act nor the APA allows that result

## IV.   EPA'S INDEFINITE STAY IS ARBITRARY AND CAPRICIOUS.

Even if the Clean Air Act's clear limitations on EPA's authority to stay the effective date of § 112 rules could be overlooked and even if the stay at issue here were (as EPA claims) a stay pending judicial review rather than reconsideration, *but see supra* at 19-20, APA § 705 permits EPA to postpone the effective date of a rule pending judicial review only when "justice so requires." 5 U.S.C. § 705.  EPA argues that: (1) "the public did not have a sufficient opportunity to comment on certain revisions EPA made to the proposed rules"; and (2), companies will need to invest in control equipment "soon" and those investments "may not be reversible" if EPA subsequently chooses to revise the Industrial Boilers and CISWI Rules.  76 Fed. Reg. at 28,663/3.  That rationale for finding that justice required an indefinite deferral of the effective dates of the Industrial Boilers and CISWI Rules is arbitrary and capricious for at least four reasons, each of which independently requires vacatur.  *See* 5 U.S.C. § 706(2)(A).

First, EPA fails to consider or even acknowledge the impact of its Indefinite Stay on people who are exposed to emissions from Industrial Boilers and CISWI.  The agency itself has stated, however, that Industrial Boilers and CISWI Rules will save thousands of lives each year once facilities come into compliance with them.  Boilers Fact Sheet, Ex. C at 2.  Each year after the compliance date, the rules will also prevent thousands of non-fatal heart attacks, asthma attacks, respiratory ailments, and hundreds of thousands of days when people are forced to miss work or school because pollution has made them too sick to function.  *Id.*  Staying the Industrial Boilers and CISWI Rules delays compliance by new Industrial Boilers, who were required to meet the new standards by May 20, 2011.  40 C.F.R. § 63.7495(a).  Further, EPA necessarily

increases the likelihood that compliance by existing Industrial Boilers and CISWI will also be postponed.  Indeed, EPA makes plain the objective of the Indefinite Stay is to prevent sources from having to make "compliance investments."  76 Fed. Reg. at 28,663/3. [13]  *See supra* at 13 (*citing* 42 U.S.C. § 7412(i)(3)).  If the Indefinite Stay postpones compliance by existing sources even for only one year, it will cause thousands of people to die and suffer from air pollution that the Industrial Boilers and CISWI Rules would otherwise prevent.  EPA's complete failure to consider the effects the Indefinite Stay on the people whose health it will impact when issuing a stay that purports to serve the requirements of "justice" is quintessentially arbitrary and capricious.  *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (action is arbitrary where agency "entirely failed to consider an important aspect of the problem").

Second, EPA's decision to grant *reconsideration* of the Industrial Boilers and CISWI Rules will fully address any notice and comment deficiency in rulemakings.  *Staying* these rules adds nothing to that process.  EPA fails to articulate any rational connection its alleged concern for public comment opportunity and its decision not just to reconsider the Industrial Boilers and CISWI Rules but to stay them as well.  Indeed, EPA routinely addresses notice and comment deficiencies through reconsideration without also staying the rules at issue. *See State Farm*, 463

---

[13] Even absent a stay, existing sources will not need to comply with the Industrial Boilers Rule before March 21, 2014 at the earliest, and may be given an additional year to March 21, 2015 if necessary.  *See* 42 U.S.C. §§ 7412(i)(3)(A)-(B).  Similarly, existing sources will not need to comply with the CISWI Rule before March 21, 2015, and may not need to comply until March 21, 2016.  *See* 76 Fed. Reg. at 15,711/3 (States "must submit revised state plans to EPA March 21, 2012); 42 U.S.C. § 7429(f)(2)(standards shall be effective no later than three years after state plans are approved or five years after promulgation, whichever is earlier); § 7429(f)(3) (sources must comply with § 129 standards by effective date).

U.S. at 43 (action is arbitrary where agency fails to articulate a "rational connection between the facts found and the choice made").

Third, as set forth above, in its function and its rationale, the Indefinite Stay is a stay pending reconsideration, rather than litigation. By failing to link its rationale – EPA's voluntary reconsideration – to the statutory provision it invokes, APA § 705, EPA has acted arbitrarily and capriciously. *See State Farm*, 463 U.S. at 43 (action is arbitrary where agency fails to articulate a "rational connection between the facts found and the choice made").

Finally, EPA itself has recognized repeatedly in the past that agency-granted stays under APA § 705 should be subject to the same four part test as stays granted by a court: "1) Has the petitioner made a strong showing that it is likely to prevail on the merits of its Appeal? 2) Has the petitioner shown that without such relief it will be irreparably injured? 3) Would the issuance of a stay substantially harm other parties interested in the proceedings? and 4) Where does the public interest lie?" *In re Pub. Serv. Co. of New Hampshire*, 1 E.A.D. 389, 389 (1977) (*citing Virginia Petroleum Jobbers Ass'n v. FPC*, 259 F.2d 921, 925 (D.C. Cir. 1958)).  EPA recently applied this test, for example, in denying § 705 stays of its NAAQS for sulfur dioxide (76 Fed. Reg. 4,780, 4,788 (January 26, 2011)) and its endangerment finding with respect to greenhouse gases under Clean Air Act § 202 (75 Fed. Reg. 49,556, 49,563 (August 13, 2010)).  EPA does not mention either the *Virginia Jobbers* test or its own prior application of this test  in its decision to stay the Industrial Boilers and CISWI rules, far less provide a reasoned basis for applying the *Virginia Jobbers* test elsewhere but not here.  *See State Farm*, 463 U.S. at 42 (agency must supply "reasoned analysis" for change in course); *Jicarilla Apache Nation v. DOI*, 613 F.3d 1112, 1120 (D.C. Cir. 2010) ("We have held that '[r]easoned decision making … necessarily requires the agency to acknowledge and provide an adequate explanation for its

departure from established precedent,' and an agency that neglects to do so acts arbitrarily and capriciously.") (*quoting Dillmon v. NTSB*, 588 F.3d 1085, 1089-1090 (D.C. Cir. 2009) (*citing FCC v. Fox Television Stations, Inc.* __ U.S. __, __, 129 S. Ct. 1800, 1811 (2009))); *see also Burlington N. and Santa Fe Ry. Co. v. STB*, 403 F.3d 771, 777 (D.C. Cir. 2005) ("Where an agency applies different standards to similarly situated entities and fails to support this disparate treatment with a reasoned explanation and substantial evidence in the record, its action is arbitrary and capricious and cannot be upheld.").

## CONCLUSION

For the reasons given above, Sierra Club respectfully requests that this Court grant its motion for summary judgment, declare that the Indefinite Stay is unlawful, and vacate the Indefinite Stay.

DATED: August 3, 2011

Respectfully submitted,

/s/James S. Pew
James S. Pew
(D.C. Bar # 448830)
Earthjustice
1625 Massachusetts Avenue, NW
Suite 702
Washington, D.C. 20036
Phone: (202) 667-4500
Fax: (202) 667-2356
Email: jpew@earthjustice.org
*Counsel for Sierra Club*

/s/Sanjay Narayan (with permission)
Sanjay Narayan
(CA Bar # 183227 )
Sierra Club Environmental Law Program
85 Second Street, 2nd Floor
San Francisco, CA, 94105
Phone: (415) 977-5769
Fax: (415) 977-5783
Email: Sanjay.narayan@sierraclub.org
*Counsel for Sierra Club*