# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SIERRA CLUB | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No.  11-1278-PLF |
| | ) | |
| LISA P. JACKSON, Administrator | ) | |
| U.S. Environmental Protection Agency, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## SIERRA CLUB'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO CROSS-MOTION OF DEFENDANT FOR SUMMARY JUDGMENT

James S. Pew
(D.C. Bar # 448830)
Earthjustice
1625 Massachusetts Avenue, NW
Suite 702
Washington, D.C. 20036
Phone: (202) 667-4500
Fax: (202) 667-2356
Email: jpew@earthjustice.org
*Counsel for Sierra Club*

Sanjay Narayan
(CA Bar # 183227 )
Sierra Club Environmental Law Program
85 Second Street, 2nd Floor
San Francisco, CA, 94105
Phone: (415) 977-5769
Fax: (415) 977-5783
Email: Sanjay.narayan@sierraclub.org
*Counsel for Sierra Club*

DATE: September 1, 2011

## INTRODUCTION

EPA's Indefinite Stay of the Industrial Boilers and CISWI rules is a transparent attempt to defeat statutory and court-ordered deadlines for the implementation of pollution limits that will undisputedly save thousands of lives a year every year they are in effect.  The Clean Air Act required EPA to issue these rules no later than November 15, 2000.  After years of delay and repeated extension requests from EPA, this Court ordered the agency to complete them no later than February 21, 2011.

Rather than complying with the Order in good faith, the agency signed the rules, but indefinitely deprived them of all effect (citing exactly those circumstances which this Court had found to be insufficient to justify additional delay).  EPA did so by claiming authority to delay the effectiveness of the rules until its administrative reconsideration of the rules is complete, or until judicial review of the rules is complete, "whichever is earlier." 76 Fed. Reg. 28,662, 28,664 (May 18, 2011).  EPA then moved the D.C. Circuit to hold judicial review in abeyance until the agency finished its reconsideration proceedings – ensuring that the stay will end only when EPA chooses to conclude the reconsideration process.  Because there is no requirement compelling EPA to complete that process by any date certain, the rules' effectiveness has been indefinitely delayed.  The pollution sources they govern will not have to do anything to control their emissions until EPA – at a time of its own choosing – completes another round of notice and comment rulemaking.

The Clean Air Act allows EPA to stay the Industrial Boilers and CISWI rules for only three months.  42 U.S.C. § 7607(d)(7)(B).  To sidestep this limit – and obtain the far longer compliance-free delay that this Court refused to authorize – EPA issued the stay under the Administrative Procedure Act (APA) instead of the Clean Air Act.  It did not, however, follow the procedural requirements contained in the APA.  EPA now defends that failure by claiming

that the stay is merely a "temporary procedural device,' and therefore exempt from notice and comment requirements.  The text of the APA and binding D.C. Circuit precedent show otherwise.

EPA also asks this Court to grant it authority which Congress denied it.  The Clean Air Act specifies precisely when the Industrial Boilers rule and the CISWI rule become effective, 42 U.S.C. §§ 7412(d)(10) & 7429(f); the circumstances under which they may be stayed, 42 U.S.C. § 7607(d)(7)(B); and the duration of such stays, *id.*  As the D.C. Circuit has firmly established, these provisions leave the agency no discretion to further delay the effectiveness of § 112 and § 129 rules.  *Natural Res. Def. Council v. Reilly,* 976 F.2d 36, 40-41 (D.C. Cir. 1992).  And even if some such residual authority existed, EPA lacks the authority for this particular stay.  EPA's indefinite stay is based entirely on the agency's decision to commence reconsideration proceedings and its belief that the possibility of changes during that reconsideration justifies indefinitely suspending their effectiveness.  76 Fed. Reg. at 28,664.  Congress enacted a different policy: a rule may be stayed pending reconsideration for only three months.  42 U.S.C. § 7412(d)(7)(B).

Even if EPA's indefinite stay of the Industrial Boilers and CISWI rules were authorized by the Clean Air Act and had not been issued in violation of the APA's notice and comment requirements, it is arbitrary and capricious.  As EPA's reply confirms, the agency failed completely to consider an important part of the problem when it issued the stay in the interests of "justice": the effects of the stay on the thousands of people who will be sickened and killed by further delay in pollution reductions that are already long overdue.  EPA's reply further confirms that EPA failed to articulate any connection between its rationale for the Indefinite Stay – its reconsideration of the Industrial Boilers and CISWI rules – and the stay's purported statutory

basis – judicial review.  And EPA provided no explanation for its departure from previous

decisions where the agency had interpreted section 705 to demand application of the familiar

four-part test for stays.

I.      **EPA'S FAILURE TO PROVIDE NOTICE AND OPPORTUNITY FOR
        COMMENT ON THE INDEFINITE STAY CONTRAVENES THE APA.**

        The Indefinite Stay nullifies emission standards governing thousands of industrial boilers

and waste incinerators.  For as long as the Indefinite Stay remains in force, its legal and practical

effects are equal in weight – if opposite in intent – to those of the Industrial Boilers and CISWI

rules themselves.  EPA nevertheless failed to provide any notice or opportunity for comment on

the Indefinite Stay.  The agency now seeks to justify that failure by arguing that "[p]roperly

construed," the Indefinite Stay is not a "rule" under the APA, but "only a temporary procedural

device."  Opp. At 12.

        That contention is at odds with the text of the APA and controlling Circuit precedent.

The APA provides that "'rule' means the whole or a part of an agency statement of general or

particular applicability and future effect designed to implement, interpret, or prescribe law or

policy…"  5 U.S.C. § 551(4).  The Indefinite Stay fits easily within this definition, which, as the

D.C. Circuit has noted repeatedly, is extraordinarily capacious.  *Center for Auto Safety v.

NHTSA*, 710 F.2d 842, 846 (D.C. Cir. 1983) (it is "broad enough 'to include nearly every

statement an agency may make'")(*quoting Batterton v. Marshall*, 648 F.2d 694, 700 (D.C. Cir.

1980))).  The Stay is a statement of "general or particular applicability," 5 U.S.C. § 551(4); it

exempts all industrial boilers and incinerators, without exception.  The Stay has "future effect";

following the Stay, the standards have no effect.  And the Stay is "designed to implement [and] .

. . prescribe . . . law or policy," *id.*; the Stay indefinitely postpones the effectiveness of the

Industrial Boilers and CISWI rules.  As EPA itself states, its purpose is to allow "thousands of

facilities" to avoid the compliance investments that would otherwise be necessary.  76 Fed. Reg. at 28,663/3.

The D.C. Circuit and Third Circuit have already considered and rejected the notion that EPA can postpone the effectiveness of a rule without complying with the APA's rulemaking requirements.  *Envt'l Def. Fund  v Gorsuch*, 713 F.2d 802, 815-817 (D.C. Cir. 1983) ("*EDF*"); *NRDC v. EPA*, 683 F.2d 752, 764 (3rd Cir. 1982).  *See* SC Memo at 15 (*citing EDF*).  Like the present case, *EDF* resulted from EPA's failure to meet a statutory deadline to issue environmental regulations.  713 F.2d at 805-806.  Under a court order, EPA issued the overdue rules; but the agency shortly thereafter announced a "policy" not to implement them.  *Id.* at 808. As here, EPA's action "indefinitely delayed the time when actual compliance" with the rules would occur.  *Id.* at 808-809.  EPA attempted to avoid the APA's rulemaking requirements by describing the delay as a "general policy" statement rather than a rule.  *Id.* at 817.

The Court noted:

> If the effective date were not "part of an agency statement" such that material alterations in that date would be subject to the rulemaking provisions of the APA, it would mean that an agency could guide a future rule through the rulemaking process, promulgate a final rule, and then effectively repeal it, simply by indefinitely postponing its operative date.

*Id*. at 815 (quoting NRDC, 683 F.2d at 762).  Citing the Circuit's previous decision in NRDC, the Circuit held: "an agency action which has the effect of suspending a duly promulgated regulation is normally subject to APA rulemaking requirements."  *Id.* at 816. *See also Kennecott Utah Copper Corp. v. U.S. Dep't of Interior*, 88 F.3d 1191, 1207 (D.C. Cir. 1996) (*citing EDF* and *NRDC*).  *EDF* is directly on point, as is *NRDC* (upon which the *EDF* court relied).

EPA makes no attempt to explain why it believes that the Indefinite Stay does not comport with the broad definition of "rule" in APA § 553 and does not even acknowledge *EDF*

(far less attempt to distinguish this binding precedent).[1]  Instead, the agency seizes on APA

§ 553(d), which requires publication of rules not less than thirty days before their effective date,

to argue that Congress could not have intended to give EPA the impossible task of providing

notice and comment on APA stays in thirty days or less.  Opp. at 11-12.  APA § 553(d) creates

no such impossibility.  It requires agencies to publish rules "not less than" thirty days before

their effective date; it does not prohibit EPA from publishing rules *more* than" thirty days before

their effective date.  When EPA issues rules under the APA, the agency can, if it wishes, publish

the rule sufficiently in advance of its effective date so as to allow for notice and comment prior

to issuing a stay.[2]  Nor was it impossible for EPA to provide notice and opportunity to comment

on the Indefinite Stay.  EPA promulgated the Industrial Boilers and CISWI rules on February 21,

2011 and did not issue the Indefinite Stay until May 16, 2011, almost ninety days later.  Finally,

it bears emphasis that EPA's impossibility argument is not merely wrong; it cannot possibly be

used to over-write the plain text of the APA and the D.C. Circuit's decision in *EDF*, both of

---

[1] EPA does not claim that the Indefinite Stay falls within any of the exemptions from rulemaking requirements spelled out in the APA : "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice" or rules where the agency (in the rule itself) found for good cause that notice and comment were impracticable, unnecessary, or contrary to public interest.  5 U.S.C. § 553(b)(3)(A)-(B).  *See* 76 Fed. Reg. at 28,663-664.  Even if EPA had claimed that the Indefinite Stay was exempt under § 553(b)(3)(A) or (B), however, *EDF* expressly rejects the notion that indefinite stays of promulgated rules can be viewed as a "general policy statement."  *EDF*, 713 F.2d at 817 ("The 'policy' relieved owners and operators of all existing incinerators and storage impoundments from having to … put their facilities in compliance with duly promulgated regulations.").

[2] Contrary to EPA's suggestion (at 11), it is irrelevant that EPA promulgated the Indefinite Stay before what it regards as those rules' "effective dates."  Because the indefinite stay of the effective date of a "duly promulgated" standard is a "rule" under the APA, *EDF*, 713 F.2d at 816, such a stay must satisfy APA rulemaking requirements regardless of whether the underlying rule has already become effective.  *See NRDC*, 683 F.2d at 759-760 & n16, 761 n20 (rejecting argument that because rule was not effective, it was not subject to APA requirements).

which make plain that stays of final rules such as the Indefinite Stay are APA "rule[s]" subject to

notice and comment requirements. *EDF,* 712 F.3d at 815.[3]

## II.    EPA LACKS STATUTORY AUTHORITY FOR THE INDEFINITE STAY.

### A.    Clean Air Act § 112(d)(1) and § 307(d)(7)(B) Eliminate EPA's General Authority To Issue The Indefinite Stay.

EPA argues that, notwithstanding Clean Air Act § 112(d)(10) and § 307(d)(7)(B), it retains

general authority to stay the effective date of Clean Air Act rules pending judicial review under

APA § 705.  Opp. at 6-11.  The agency claims that § 112(d)(10) says nothing about EPA's

authority to delay rules' effectiveness, and that § 307(d)(7)(B) speaks only to stays pending

reconsideration (not stays pending litigation).  From the Act's failure to specify that these

provisions constrain the Agency even when litigation is pending, EPA asks this Court to

conclude that it may evade them under those circumstances.

Section 112(d)(10) provides without exception that section 112 standards "shall be effective

upon promulgation."  42 U.S.C. § 7412(d)(10).  *See also* 42 U.S.C. § 7429(f)(1)-(2) (specifying

the effective dates for section 129 standards).  Section 307(d)(7)(B), added in the Clean Air Act

amendments of 1977, provides closely circumscribed authority to delay the effectiveness of

Clean Air Act rules under § 112 or 129; it allows EPA to stay them only pending agency

reconsideration, and only for three months.  42 U.S.C. § 7607((b)(1) & (d)(7)(B).  *See Reilly*,

976 F.2d at 41; SC Memo at 15.  In combination, these provisions provide a rule (standards shall

be effective when promulgated), a single exception (allowing EPA to delay effectiveness when it

reconsiders rules), and strict limitations on that exception (effectiveness may be delayed for no

---

[3] Though this failure is sufficient to justify vacatur of the Stay, the Court can and should confirm that the APA provides no authority for the delay sought by EPA.

more than 90 days).  When Congress uses such unequivocal and mandatory language –

specifying when the rules become effective, the circumstances under which effectiveness can be

delayed, and the maximum duration of such delay – it does not need to also anticipate and rule

out every possible exception that an agency might dream up to circumvent it.  *See Shays v. FEC*,

414 F.3d 76, 108 (D.C. Cir. 2005) ("The already capacious U.S.Code would require even more

volumes if Congress could be clear only by ruling out every possible limitation on statutory

language.").

   The D.C. Circuit confirmed, in *Reilly*, that these provisions cannot be reconciled with any

residual EPA authority to stay the effective dates of rules issued under sections 112 or 129 of the

Clean Air Act.  Contrary to EPA's claim (at 10-11), *Reilly* did not merely make a narrow finding

that EPA lacked authority under Clean Air Act § 301 to stay the effective dates of rules issued

under Clean Air Act § 112(q).  *Reilly* holds, "prior to the enactment of the 1990 Amendments,

the EPA had *no* authority to stay the effectiveness of a promulgated standard except for the

single, three-month period authorized by section 307(d)(7)(B) of the CAA."  976 F.2d at 41

(emphasis added).  The Court was well aware that APA § 705 existed before 1990; the APA had

been on the books for almost fifty years, and the Court expressly noted EPA's reliance on APA

§ 705 for earlier stays of the radionuclide rules at issue.  *Id.* at 38.

   *Reilly* establishes that the pre-1990 Act (which included both sections 112(d)(10) and

307(d)(7)(B)) unambiguously precluded EPA from delaying the effectiveness of a promulgated

standard.  Its analysis of the portions of the Act added in 1990 is, furthermore, entirely applicable

to those at issue here.  *Reilly* found Clean Air Act Section 112(q)(1), which states that

radionuclide standards "shall remain in . . . effect . . .  unless modified as provided in this

section," to be "unambiguous" in leaving EPA "no authority" to stay those standards.  *Id* at 41

(quoting 42 U.S.C. § 7412(q)(1)).  Section 112(d)(10) expresses Congress' intent regarding the effective dates for § 112(d) rules even more clearly: they "shall be effective upon promulgation," full stop.  42 U.S.C. § 7412(d)(10).  As *Reilly* holds, such language unambiguously deprives EPA of any authority to stay § 112(d) rules.  *Reilly*, 976 F.2d at 41.[4]

And just as 112(d)(10) and 112(q)(1) specify when standards become effective, the general authority EPA unsuccessfully invoked in *Reilly* to overcome that clear statutory language is materially indistinguishable from the authority EPA invokes here.  *Reilly* holds that Section 301's "general grant of rule-making power" cannot "trump the specific provisions of the Act" governing the effectiveness of Clean Air Act rules.  976 F.2d at 41.  Like Clean Air Act § 301, § 705 of the APA embodies a general authority that applies only "*when the statute authorizing agency action fails to specify a timetable for effectiveness of decisions.*"  *Recording Industry Ass'n of America v. Copyright Royalty Tribunal,* 662 F.2d 1, at 14 (D.C. Cir. 1981) (emphasis added) (observing that section 705 merely reflects agencies' "considerable discretion to choose an effective date" pursuant to their general rulemaking powers).[5]

---

[4] Contrary to EPA's claim (at 7) giving effect to the plain meaning of § 112(d)(10) and § 307(d)(7)(B) does not "completely eliminate agency authority to set effective dates except in the limited circumstances" described in APA § 705.  EPA retains considerable general authority both to choose effective dates and to postpone effective dates – just not with respect to rules issued under statutory provisions that mandate specific effective dates, such as Clean Air Act § 112 or § 129.

[5] EPA cites *Recording Industry Ass'n* as establishing that "section 705 of the APA authorizes agencies to postpone effective dates pending judicial review."  EPA Opp. 7.  That decision, however, recognizes that Section 705 must yield when the statute specifies the effectiveness of agency actions. *Recording Indus. Ass'n,* 662 F.2d at 13-14, n33 (holding that where Copyright Act explicitly stated that determinations only become effective "unless . . . an appeal has been filed," EPA retained discretion to stay determination pending appeal).

**B.      EPA's Authority To Stay Rules Cannot Be Inferred From Congressional Silence.**

EPA notes that Section 307(d)(1) states that "[t]he provisions of section 553 through 557 and section 706 of [the APA] shall not, except as expressly provided in this subsection, apply to actions to which this subsection applies."  42 U.S.C § 7607(d)(1).  EPA claims that "Congress could have, but did not, include 705 in this section."  EPA Opp. 8.  In that congressional silence, EPA asks this Court to find *express* authority to stay the effectiveness of Section 112 (and 129) standards pursuant to APA section 705.  *Id.*

As the Supreme Court and D.C. Circuit have observed, Congressional intent cannot be easily presumed from statutory omission.  *Chevron U.S.A., Inc. v. Echazabal,* 536 U.S. 73, 80-82 (2002); *Cheney R.R. Co, Inc. v. I.C.C.,* 902 F.2d 66, 68-69 (D.C. Cir. 1990) (noting that "[s]cholars have long savaged" the use of canon of *expressio unius* to infer congressional intent from silence) *See also State of Illinois v. Schweiker,* 707 F.2d 273, 277 (7th Cir. 1983) ("Not every silence is pregnant.").  The force of the "maxim" that the mention of one thing implies the exclusion of others (*expressio unius*) "depends entirely on context, whether or not the draftsmen's mention of one thing . . . does really necessarily, or at least reasonably, imply the preclusion of alternatives."  *Shook v. District of Columbia Financial Responsibility & Mgmt Assistance Auth'y,* 132 F.3d 775, 782 (D.C. Cir. 1998).

The plain text of the Act contradicts the inference that EPA seeks – that the agency possesses the authority to delay the effectiveness of Section 112 and 129 Rules.  Section 112(d)(10) directly establishes that section 112 standards are "effective upon promulgation."  42 U.S.C. § 7412(d)(10).  Section 129(f)(1) and (2) set specific effective dates for § 129 standards.  42 U.S.C. § 7429(f)(1), (2).  Section 307's *silence* regarding EPA's authority to delay effective

dates cannot trump that enacted text.[6]  "Congressional enactments are better evidence of legislative intent than is congressional silence."  *Cummings v. Dep't of Navy,* 279 F.3d 1051, 1055 (D.C. Cir. 2002).  The words used in Section 112(d)(10) of the Act, as the Circuit squarely held in *Reilly,* unambiguously deprive EPA of any authority to delay the effectiveness of standards issued under those sections; that language cannot be reconciled with any additional EPA discretion to stay the effectiveness of those rules.  976 F.2d at 40.

Indeed, section 307's limited grant of stay authority *confirms* that EPA has "no authority" to stay rules under Clean Air Act section 112, except as expressly provided in § 307(d)(7)(B). *Reilly*, 962 F.2d at 41.  Because section 112(d)(10) and 129(f) speak directly to the effectiveness of section 112 and 129 standards, the Court need not decide whether Section 307(d)(7), of itself, was meant to eliminate EPA's authority to issue stays of other rules (lacking the effectiveness language of section 112 and 129), on grounds beyond those specified in that section.  *See* EPA Opp. At 8-9.  Sections 112 and 129 leave no stay authority for section 307 to "preserve," *id.* at 8.

The legislative history of the Clean Air Act further refutes any Congressional intent to allow EPA to stay the Industrial Boilers and CISWI Rules without using statutory mechanisms provided by the Act.  Congress directly eliminated EPA's general discretion over § 112 rules in 1970 by establishing that they "shall be effective upon promulgation," 42 U.S.C. § 7412(d)(10). *Reilly*, 976 F.2d at 41.  *See Recording Industry Ass'n of America*, 662 F.2d at 14.  Consequently,

---

[6] That is especially true because section 112(d)(10) was enacted seven years before section 307(d).  *Southern California Edison Co. v. F.E.R.C.,* 116 F.3d 507, 514 (D.C. Cir. 1997) ("[S]ubsequent Congressional views are a treacherous basis for divining Congress's intent at an earlier point in time.").  And Congress's subsequent views of EPA's authority under section 705 are, at best, mixed.  *See* S. Rep. 228, 101st Cong., 1ˢᵗ Sess. 372 (1989) (noting intent to avoid "limit[ing] the *effectiveness* or enforceability of EPA's action pending reconsideration *or judicial review."* (emphasis added)).

in 1977 – when Congress added section 307(d)(1) to the Act – EPA did not have any authority to stay section 112 rules, under Section 705 of the APA or otherwise.[7]  Congress had no reason to consider (much less include in 307(d)(1)) EPA's authority to delay section 112 rules under section 705 of the APA – because such authority did not exist.  No inference can be drawn from Congress's failure to displace authority that the Agency already lacked.[8]  "[T]he structure of the statute and . . . its legislative history" thus do not suggest that "a normal draftsman when he expressed 'the one thing' [APA §§ 553- 557 & 706] would have likely considered the alternatives [APA § 705] that are arguably precluded."  *Shook,* 132 F.3d at 782.  Given that when Congress enacted section 307(d)(1) EPA had no authority to delay the effectiveness of section 112 rules, 42 U.S.C. § 7412(d)(10), a normal draftsman would not have considered the need to "preclude" that alternative at all.

**C.   This Case Does Not Implicate Judicial Authority to Stay Clean Air Act Standards.**

EPA also contends that because "[t]here is nothing in the [Clean Air Act] that indicates that Congress intended to restrict the D.C. Circuit's [authority] to stay a rule pending litigation," Congress cannot have intended to restrict EPA's ability to stay its rules.  EPA Opp. 9.  Whether the *Circuit* could stay the Rules pending litigation is irrelevant, however, for two reasons.  First, EPA's authority to stay rules is not coextensive with that of the courts.  Section 705 recognizes separate agency and judicial powers to stay rules, governed by different standards and arising

---

[7] Congress had no reason to consider section 129 at all when it enacted section 307; section 129 was added to the Clean Air Act in 1990.

[8] Congress addressed two items in the 1977 amendments to Section 307: it altered the previously governing rule-making procedures, and confirmed the applicability of the APA's standard of review.  That substantive focus explains the enumeration the APA's rule-making and standard-of-review provisions in 307(d)(1)  *See generally Small Refiner Lead Phase-Down v. EPA*, 705 F.2d 506, 519-20 (D.C. Cir. 1983) (discussing legislative history).

from different sources: (1) agencies' ability to delay effectiveness whenever the agency feels that "justice" requires, arising from agencies' general discretion over the effectiveness of their actions; and (2) courts' power to issue stays "to prevent irreparable injury" and sustain the status quo, arising from courts' traditional powers in equity and the All Writs Act. *See Scripps-Howard Radio v. FCC,* 316 U.S. 4, 9 (1942); *Bannercraft Clothing Co. v. Renegotiation Bd.,* 466 F.2d 345, 353 (D.C. Cir. 1972) (noting that judicial power to stay actions has been derived from equity or from All Writs Act), *rev'd on other grounds by* 415 U.S. 1 (1974). *See also* Administrative Procedure Act: Legislative History, 79th Congress, 1944–46, at 38 (noting intent to codify traditional equity authority described in *Scripps-Howard*). The Clean Air Act clearly constrains agencies' general discretion over the effectiveness of its rules. 42 U.S.C. § 7412(d)(10). Whether it imposes constraints on courts' equitable powers is immaterial.

Second, in its purpose, rationale, and effect, the Indefinite Stay is a stay pending *reconsideration*; EPA has made no effort to ground the stay in the existence or consequences of *litigation.* 76 Fed. Reg. at 28,663. *See* SJ Mem. 19-20 & *infra* at 15-17. Under those circumstances, even the Circuit lacks the authority to stay the Rules. 42 U.S.C. § 7607(d)(7)(B). *See Miller v. French,* 530 U.S. 327, 337-38 (2000).

EPA (or any other party) can, if it wishes, ask the Circuit for a stay pending litigation. To do so, it would need to make a different showing than it makes here, and rely on different authority than it invokes here. It would also have to allow the Circuit litigation to move forward, so that the stay would function as one pending litigation, rather than reconsideration.[9] EPA has not

---

[9] EPA suggests that because the D.C. Circuit could, in theory, deny its motions to hold the Industrial Boilers and CISWI cases in abeyance, the Indefinite Stay functions as a stay pending appeal. Both the Indefinite Stay, and EPA's requests to hold the cases in abeyance, indicate otherwise. The Stay, by its terms, expires when EPA's reconsideration ends, and is based on

*footnote continued on next page…*

done so, instead claiming for itself the unconstrained authority to delay the effectiveness of the Rules, because it does not believe the Rules should be effective during its reconsideration proceedings.  Whatever authority Congress has provided the courts, the Clean Air Act does not give the Agency that authority.[10]

### III. EVEN IF THE APA AUTHORIZED EPA TO STAY THE EFFECTIVE DATE OF FINAL RULES UNDER CLEAN AIR ACT § 112 AND § 129, IT WOULD NOT AUTHORIZE THE AGENCY TO DO SO PENDING RECONSIDERATION PROCEEDINGS.

In its rationale, purpose, and effect, EPA has stayed the Industrial Boilers and CISWI rules pending its reconsideration of these rules – precisely the circumstances under which the Clean Air Act restricts EPA's authority to delay the effectiveness of its rules.  42 U.S.C. § 7607(d)(7)(B).  EPA responds that "litigation challenging both rules is indeed pending in the D.C. Circuit," and that therefore whether the Indefinite Stay is one pending reconsideration or litigation is "a distinction without a difference." EPA Opp. 15.

---

*…footnote continued from previous page.*
rationales stemming entirely from EPA's reconsideration of the Rules (and wholly unrelated to the litigation).  And EPA's Motions make no mention of the Indefinite Stay; they reveal, instead, EPA's intent to conclude its reconsideration before the litigation even begins, thereby ensuring that the Stay functions as a stay pending reconsideration.

[10] EPA argues that "Congress chose not to include exemptions for any existing laws, including [Clean Air Act] section 112(d)(10)," in the Congressional Review Act, 5 U.S.C. § 804, and so "EPA could not have established an effective date earlier than that designated in the Rules: May 20, 2011."  EPA Opp. Mem. 9.  Even if the Congressional Review Act could be read to impliedly amend Section 112(d)(10), *but see Liesegang v. Secretary of Veteran's Affairs,* 312 F.3d 1368, 1374-75 (Fed. Cir. 2002), by inserting sixty days between the promulgation of the Rules and their effective dates, it provides EPA no further discretion to further delay the Rules' effectiveness, *see* 5 U.S.C. § 804, or otherwise alter the restrictions imposed by the Clean Air Act on EPA's ability to delay its standards, *see Reilly,* 976 F.3d at 41.

As set forth above, the Clean Air Act does not leave EPA any authority to delay the effectiveness of section 112 and 129 rules beyond the framework established in the Act. 42 U.S.C. §§ 7412(d)(10) & 7429(f). But even if EPA retained some such extra-statutory authority, Congress specifically limited stays pending reconsideration to a duration "not to exceed three months." 42 U.S.C. § 7607(d)(7)(B). The distinction between such stays and other stays does, therefore, make a difference; by issuing an *indefinite* stay pending reconsideration, EPA has claimed authority which Congress directly denied it in Section 307(d)(7)(B) (as well as in sections 112(d)(10) and 129(f)).

And the Indefinite Stay is decisively a stay pending reconsideration. The entirety of EPA's rationale for the Stay is premised upon its commencement of reconsideration proceedings. EPA's stated reasons for issuing the Stay are: (1) "EPA has identified several issues in the final rules *which it intends to reconsider* because we believe the public did not have a sufficient opportunity to comment"; (2) "EPA received data before finalizing both rules but was unable to incorporate that data into the final rules," so that the "standards [may be] revised *following reconsideration* and full evaluation of the data"; and (3) "thousands of facilities . . . will need to begin to make major compliance investments soon," which "investments may not be reversible if the standards are in fact revised *following reconsideration."* 76 Fed. Reg. at 28,663 (emphases added). None of the above have anything to do with *litigation* (EPA's notice accompanying the Stay mentions the existence of litigation only in passing).[11]

---

[11] In effect as well as rationale, the Indefinite Stay is one pending reconsideration. By its terms, it will remain in effect "until the proceedings for judicial review . . . are complete *or the EPA completes its reconsideration of the rules,* whichever is earlier." 76 Fed. Reg. At 28,664 (emphasis added). The D.C. Circuit already has granted EPA's motion to hold the Industrial Boilers rule in abeyance. Therefore, the Indefinite Stay of the Industrial Boilers rule will remain in effect until EPA completes its reconsideration process – a process that EPA has in the past

*footnote continued on next page…*

The Agency has, in short, stated its belief the Industrial Boilers and CISWI Rules should not become effective, because it has commenced reconsideration proceedings which may (or may not) cause those rules to be changed.  Congress expressed a different belief in the text of the Act: EPA may "convene a proceeding for reconsideration of [a] rule," but "[t]he effectiveness of [a] rule may be stayed during such reconsideration . . . by the Administrator or the court for *a period not to exceed three months."*  42 U.S.C. § 7607(d)(7)(B)  The mere existence of litigation does not eliminate that constraint; indeed, the statute's reference to "the court" demonstrates that Congress understood that litigation would occur simultaneously with EPA's reconsideration, and meant the three-month restriction to apply nevertheless.  EPA has, by its own account, stayed the Rules based on the agency's policy judgment that standards which may be changed as a result of reconsideration proceedings should not be effective.  76 Fed. Reg. at 28.663.  Congress made the opposite judgment in the text of the Clean Air Act.  42 U.S.C. § 7607(d)(7)(B).  The Stay should, therefore, be vacated.

## IV.   EPA'S INDEFINITE STAY IS ARBITRARY AND CAPRICIOUS.

EPA confirms, in its briefs, that the Agency completely failed to consider the impact of the Indefinite Stay on the public.  *See* SC Memo at 21-22.  Although the agency asserts that it struck "a reasonable balance of the competing interests and concerns,"Opp. at 15, it identifies no portion of the administrative record showing that it considered the effects of the Indefinite Stay on public health and the environment and, in particular, on the thousands of people who (by the

---

*…footnote continued from previous page.*
dragged on for years.  Unless the D.C. Circuit denies EPA's motion to stay the CISWI rule in abeyance, which is a highly unlikely possibility given that Court's reluctance to review a rule that may change in the reconsideration process, the CISWI rule will be stayed until the end of EPA's reconsideration process as well.

agency's own estimates) will die prematurely or suffer from debilitating illness if the pollution

reductions from the Industrial Boilers and CISWI rules are further delayed.  *See* SC Memo at 21-

22.  Thus, EPA "entirely failed to consider an important aspect of the problem."  *Motor Vehicle*

*Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).  *See* S. Rep. No. 228,

101st Cong., 1st Sess. at 127 (1989) (noting congressional concern with effects to public health).

EPA's briefs also confirm that the agency did not articulate a rational connection between

the choice it made and "the facts [it] found".  *See* SC Memo at 23 (*quoting State Farm*, 463 U.S.

at 43).  Dissatisfied with the limited authority Congress gave it to stay the Industrial Boilers and

CISWI rules for three months pending reconsideration, 42 U.S.C. § 7607(d)(7)(B), EPA chose to

issue the Indefinite Stay under the APA pending "judicial review."  76 Fed. Reg. at 28,663/3-

28,664/1.  As EPA's brief makes clear, however, the only basis for the Indefinite Stay is the

Agency's belief that rules should not be effective while they are being reconsidered.  Opp. at 14-

15.  It is not enough that litigation exists, Opp. at 15; where EPA seeks to stay a rule pending

"judicial review," the agency must at a minimum "articulate . . .  a "rational connection" between

the stay and the judicial review.  *State Farm*, 463 U.S. at 43 (quoting *Burlington Truck Lines v.*

*United States,* 371 U.S. 156, 168 (1962)).  EPA has not provided a "rational connection" – or any

connection at all – between its Stay and litigation.

Finally, EPA argues that it declined to use the traditional four-part test for stays because it

did not have to do so.  Opp. at 13-14.  But EPA does not dispute that it employed the four-part

test in at least one published decision, *In re Pub. Serv. Co. of New Hampshire*, 1 E.A.D. 389

(1977), and does not identify any part of the record where such an explanation can be found or

why it chose to use the test there but not for the Indefinite Stay.[12]  Even if the APA does not require EPA to use the four-part test, the agency's undisputed and unexplained departure from its own precedent is arbitrary and capricious.  SC Memo at 23-24.  *See State Farm*, 463 U.S. at 42 (agency must supply reasoned basis for change in course); *Jiccarilla Apache Nation v. DOI*, 613 F.3d 1112, 1120 (D.C. Cir. 2010) (agencies must provide reasoned explanation for departure from precedent); *Burlington N. and Santa Fe Rwy Co. v. STB*, 403 F.3d 771, 777 (D.C. Cir. 2005) (agencies must provide reasoned explanation for treating similar situations differently).[13]

## CONCLUSION

For the reasons set forth above and in Sierra Club's memorandum in support of summary judgement, Sierra Club's motion for summary judgment should be granted, EPA's motion for summary judgment should be denied, and the Indefinite Stay should be vacated.

---

[12] Decisions of EPA's Environmental Appeals Board are "formal adjudications . . . due *Chevron* deference." *In re Lyon County Landfill,* 406 F.3d 981, 984 (8th Cir. 2005) (citations omitted).

[13] EPA's lawyers seek to minimize the importance of its previous use of the test in two more recent rulemakings by claiming that it was merely responding to comments from outside parties that the test applied but not actually using the test.  Opp. at 13 n9.  No such explanation exists in the record for the Indefinite Stay, and the agency's decision cannot be sustained on the basis of *post hoc* claims by its attorneys.  *State Farm*, 463 U.S. at 50.  Further, if EPA itself believed it had no obligation to apply the four-part test in those prior rulemakings it could – and would presumably – have so stated in the record for those rules rather than explaining in detail why a stay was not warranted under the four-part test.

DATED: September 1, 2011

Respectfully submitted,

/s/James S. Pew                                    /s/Sanjay Narayan (with permission)
James S. Pew                                       Sanjay Narayan
(D.C. Bar # 448830)                                (CA Bar # 183227 )
Earthjustice                                       Sierra Club Environmental Law Program
1625 Massachusetts Avenue, NW                      85 Second Street, 2nd Floor
Suite 702                                          San Francisco, CA, 94105
Washington, D.C. 20036                             Phone: (415) 977-5769
Phone: (202) 667-4500                              Fax: (415) 977-5783
Fax: (202) 667-2356                                Email: Sanjay.narayan@sierraclub.org
Email: jpew@earthjustice.org                       *Counsel for Sierra Club*
*Counsel for Sierra Club*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 1st day of September, 2011 I have served the foregoing

**Sierra Club's Reply Memorandum In Support Of Motion For Summary Judgment And In**

**Opposition To Cross-Motion Of Defendant For Summary Judgment** on all registered

counsel through the Court's electronic filing system (ECF).


<u>/s/ James S. Pew</u>
James S. Pew