UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                    )
SIERRA CLUB,                                         )
                                                    )
          Plaintiff,                                 )
                                                    )
          v.                                         )          Civil Action No. 11-1278 (PLF)
                                                    )
LISA P. JACKSON, Administrator,                      )
U.S. Environmental Protection Agency,                )
                                                    )
          Defendant.                                 )
_____)

OPINION

          This matter is before the Court on the parties' cross-motions for summary

judgment on plaintiff's three claims.  Upon consideration of the parties' papers, the relevant legal

authorities, and the entire record in this case, the Court will grant in part and deny in part the

parties' cross-motions for summary judgment, will enter judgment for defendant on Claim 1 and

Claim 2, and will enter judgment for plaintiff on Claim 3.  As a result, the Court will declare

unlawful the defendant's "Delay Notice," 76 FED. REG. 28,662 (May 18, 2011), will vacate the

Delay Notice, and will remand the Delay Notice to defendant for further proceedings consistent

with this Opinion.[1]

_____

          [1]          The papers reviewed in connection with the pending motions include:
the plaintiff's complaint ("Compl.") [Dkt. No. 1]; the plaintiff's motion for summary judgment
("PMSJ") [Dkt. No. 8]; the defendant's memorandum in opposition to the plaintiff's motion for
summary judgment and in support of the defendant's cross-motion for summary judgment
("DMSJ") [Dkt. Nos. 20, 21]; the plaintiff's reply memorandum in support of its motion for
summary judgment and in opposition to the defendant's cross-motion for summary judgment
("PMSJ Reply") [Dkt. No. 25]; the defendant's reply in support of its cross-motion for summary
judgment ("DMSJ Reply") [Dkt. No. 35]; the plaintiff's supplemental memorandum in response
to the Court's October 13, 2011 Order ("Pl. Supp.") [Dkt. No. 43]; the intervenors' response to
plaintiff's supplemental memorandum in response to the Court's October 13, 2011 Order
("Intervenor Supp. Response") [Dkt. No. 50]; the defendant's response to the plaintiff's
supplemental memorandum ("Def. Supp. Response") [Dkt. No. 47]; and the plaintiff's

I.  BACKGROUND

The Court previously has described the factual and procedural background of this case, see Sierra Club v. Jackson, Civil Action No. 11-1278, 2011 WL 4448610, at *1-3 (D.D.C. Sept. 27, 2011), and therefore will limit its discussion accordingly.

In Sierra Club v. Jackson, Civil Action No. 01-1537, this Court ordered defendant, the Environmental Protection Agency, to promulgate long-overdue emission standards under the Clean Air Act by February 21, 2011.  See Sierra Club v. Jackson, Civil Action No. 01-1537, 2011 WL 181097, at *14 (D.D.C. Jan. 20, 2011).  In accordance with that order, on February 21, 2011, EPA signed two rules regulating emission standards: (1) the "Boiler Rule," defined by EPA as a rule "to regulate emissions of hazardous air pollutants . . . from industrial, commercial, and institutional boilers and process heaters located at major sources of [hazardous air pollutant] emissions"; and (2) the "CISWI Rule," defined by EPA as a rule to "regulate emissions of certain air pollutants from commercial and industrial solid waste incineration units[.]"  76 FED. REG. 28,662, at 28,663 (May 18, 2011).

As EPA describes it, by 2014, the Boiler Rule will lead to significant annual health benefits; according to EPA's estimates, the rule will help avoid:

- 2,500 to 6,500 premature deaths,
- 1,600 cases of chronic bronchitis,
- 4,000 nonfatal heart attacks,
- 4,300 hospital and emergency room visits,
- 3,700 cases of acute bronchitis,
- 78,000 cases of respiratory symptoms,
- 310,000 days when people miss work or school,
- 41,000 cases of aggravated asthma, and
- 1,900,000 days when people must restrict their activities.

---

supplemental reply memorandum in response to the Court's October 13, 2011 Order ("Pl. Supp. Reply") [Dkt. No. 48].  The Court also reviewed the administrative record for the final agency action at issue in this case ("AR") [Dkt. No. 18].

PMSJ, Ex. C, EPA Fact Sheet, Final Air Toxics Standards for Industrial, Commercial, and

Institutional Boilers and Process Heaters at Major Source Facilities at 2-3.  Similarly, according

to EPA's estimates, by 2016, the CISWI Rule will help avoid:

- 40 to 100 premature deaths,
- 27 cases of chronic bronchitis,
- 64 nonfatal heart attacks,
- 68 hospital and emergency room visits,
- 65 cases of acute bronchitis,
- 1,350 cases of respiratory symptoms,
- 5,300 days when people miss work or school,
- 700 cases of aggravated asthma, and
- 31,000 days when people must restrict their activities.

PMSJ, Ex. D, EPA Fact Sheet, Final Amendments to New Source Performance Standards and

Emission Guidelines for Commercial and Industrial Solid Waste Incineration Units at 2.

On March 21, 2011, EPA published the Boiler Rule and the CISWI Rule in the

Federal Register and established an effective date of May 20, 2011 for each rule.  See 76 FED.

REG. at 28,663.  Also on March 21, 2011, EPA announced that it was initiating an administrative

reconsideration process with respect to certain aspects of each rule, see id., a procedure provided

for under the Clean Air Act.  See 42 U.S.C. § 7607(d)(7)(B).

Shortly thereafter, multiple parties, including plaintiff Sierra Club, filed petitions

for review of the Boiler Rule and the CISWI Rule in the United States Court of Appeals for the

District of Columbia Circuit.  The court of appeals consolidated 16 petitions for review of the

Boiler Rule into one proceeding, U.S. Sugar Corp v. EPA, No. 11-1108, and consolidated

17 petitions for review of the CISWI Rule into another proceeding, American Forest & Paper

Ass'n v. EPA, No. 11-1125.  Those petitions for review present substantive challenges to the

legal sufficiency of the Boiler Rule and the CISWI Rule under the Clean Air Act, a matter that

both Sierra Club and EPA agree is reserved for the exclusive jurisdiction of the court of appeals.

See 42 U.S.C. § 7607(b)(1); see also Sierra Club v. Johnson, 444 F. Supp. 2d 46, 60 (D.D.C.

2006).[2]

   While those petitions for review were pending in the court of appeals, on

May 18, 2011, two days before the Boiler Rule and the CISWI Rule were to go into effect, EPA

issued a notice, referred to by the agency as the "Delay Notice," staying the effective date of both

rules "until the proceedings for judicial review of these rules [in the court of appeals] are

completed or the EPA completes its reconsideration of the rules, whichever is earlier[.]"  76 FED.

REG. at 28,664.  In the Delay Notice, EPA made explicit that it was staying the effective date of

these two rules "pursuant to the APA[, that is, the Administrative Procedure Act], rather than . . .

the Clean Air Act."  Id. at 28,663.  Specifically, EPA stated that it was acting pursuant to its

authority under 5 U.S.C. § 705 of the APA, rather than under 42 U.S.C. § 7607(d)(7)(B) of the

Clean Air Act.  Id.

   Sierra Club filed this lawsuit on July 14, 2011 to challenge the validity of EPA's

Delay Notice.  See generally Compl.  In its complaint, Sierra Club asserts that it has a cause of

action against EPA under the APA, and that this Court has jurisdiction to review the Delay

---

   [2]  Both petitions for review in the court of appeals, as of the date of this Opinion, are being held in abeyance.  On August 3, 2011, on EPA's motion, the court of appeals issued an order holding in abeyance U.S. Sugar Corp. v. EPA, No. 11-1108, pending further order of the court, and the parties are required to file motions to govern future proceedings "within 30 days of the completion of the agency proceedings."  Order at 1, U.S. Sugar Corp. v. EPA, No. 11-1108 (D.C. Cir. Aug. 3, 2011).  On September 1, 2011, also on EPA's motion, the court of appeals issued an order holding in abeyance American Forest & Paper Ass'n v. EPA, No. 11-1125, pending this Court's resolution of Sierra Club's motion for summary judgment in this case, and Sierra Club's motion to enforce in Civil Action No. 01-1537.  See Order at 2, American Forest & Paper Ass'n v. EPA, No. 11-1125 (D.C. Cir. Sept. 1, 2011).  Sierra Club's motion to enforce in Civil Action No. 01-1537 will be denied as moot by an Order issued this same day.

Notice under the federal question statute, 28 U.S.C. § 1331.  Compl. ¶ 8.  Sierra Club contends

that the Delay Notice is unlawful for three independent reasons: (1) EPA failed to provide notice

and an opportunity for comment before issuing the Delay Notice, id. ¶¶ 33-36; (2) EPA lacked

the authority to issue the Delay Notice, id. ¶¶ 37-43; and (3) EPA failed to provide adequate

justification for the Delay Notice.  Id. ¶¶ 44-47.  In its request for relief, Sierra Club asks that the

Court declare the Delay Notice unlawful and that the Court vacate it.  Id. at 10.

        The parties simultaneously briefed EPA's motion to dismiss for lack of subject

matter jurisdiction and cross-motions for summary judgment.  On September 27, 2011, the Court

denied EPA's motion to dismiss, concluding that "[b]ecause EPA's Delay Notice was issued

under the APA, it is subject to judicial review in this Court under 28 U.S.C. § 1331."  Sierra

Club v. Jackson, 2011 WL 4448610, at *11.  Subsequently, in reviewing the parties'

cross-motions for summary judgment, the Court found insufficient the parties' briefing on Sierra

Club's first claim — that EPA failed to provide notice and an opportunity for comment before

issuing the Delay Notice — and the Court therefore ordered supplemental briefing.  See Sierra

Club v. Jackson, Civil Action No. 11-1278, 2011 WL 4852208, at *1 (D.D.C. Oct. 13, 2011).

That supplemental briefing has been completed, and the parties' cross-motions for summary

judgment are ripe for decision.

        In the parties' supplemental briefing, EPA again argued that this Court lacks

subject matter jurisdiction over this case.  The Court therefore first will address the issue of

subject matter jurisdiction.  It concludes that nothing in the parties' supplemental briefing

requires the Court to revisit its determination that it has jurisdiction over Sierra Club's

complaint.  The Court then will address the merits of the parties' cross-motions for summary

judgment.[3]

## II. SUBJECT MATTER JURISDICTION

On September 27, 2011, the Court denied EPA's motion to dismiss for lack of

subject matter jurisdiction.  See Sierra Club v. Jackson, 2011 WL 4448610, at *1.  As the Court

stated, it was unclear from EPA's papers whether the agency was asserting "(1) that this Court

actually lacks jurisdiction, or (2) that this Court has jurisdiction, but should defer to the ancillary

jurisdiction of the court of appeals."  Id. at *4.  "When pressed to clarify EPA's position during

oral argument [on the motion to dismiss], counsel for EPA relied primarily on the agency's

ancillary jurisdiction argument, but ultimately also asserted that the Clean Air Act divests this

Court of jurisdiction over Sierra Club's complaint."  Id.

The Court disagreed with EPA, concluding:

> EPA acted, by its own admission, under the [APA] in issuing the
> Delay Notice, rather than under the Clean Air Act.  It did so
> because the APA's administrative stay provision gave EPA more
> flexibility than the Clean Air Act, the latter's stay provision being
> expressly limited to a maximum of three months, a time that has
> since passed in this case.  But in its motion to dismiss, EPA asks
> this Court to conclude that the agency in fact acted under the Clean
> Air Act — the very Act that the agency expressly denied invoking
> in issuing the Delay Notice. . . [T]he Court . . . holds that the Delay
> Notice was issued under the APA, not the Clean Air Act.  Because
> EPA's Delay Notice was issued under the APA, it is subject to
> judicial review in this Court under 28 U.S.C. § 1331.

---

[3]       The Court heard oral argument on EPA's motion to dismiss on September 8,
2011.  After the Court denied EPA's motion to dismiss, EPA requested that the Court also hear
oral argument before deciding the parties' cross-motions for summary judgment.  See Notice of
Request for Oral Argument at 1, September 30, 2011 [Dkt. No. 37].  That request was opposed
by Sierra Club.  See Notice of Opposition to Additional Oral Argument at 1, Oct. 4, 2011 [Dkt.
No. 38].  In view of the supplemental briefing ordered by the Court and submitted by the parties,
the Court has concluded that oral argument would not assist it in resolving the pending motions
and therefore, in its discretion, will deny EPA's request for oral argument.  See Loc. Civ. R. 7(f).

Sierra Club v. Jackson, 2011 WL 4448610, at *11.  Because EPA specifically invoked the APA

to avoid the three-month limitation on stays issued under the Clean Air Act, the agency "must

suffer the jurisdictional consequences of that decision."  Id. at *7.

   In reviewing the parties' cross-motions for summary judgment, the Court

discovered an issue that neither side raised at the motion to dismiss stage that ultimately could

relate to the Court's subject matter jurisdiction.  The Court therefore ordered supplemental

briefing in a Memorandum Opinion and Order issued on October 13, 2011.  See Sierra Club v.

Jackson, 2011 WL 4852208, at *1.  As the Court stated in that Memorandum Opinion and Order,

on the issue of Sierra Club's first claim the case law suggests that the suspension or delayed

implementation of a final regulation normally constitutes substantive rulemaking that requires

notice and an opportunity for comment.  Id. at *2.  In NRDC v. Abraham, 355 F.3d 179 (2d Cir.

2004), a case that neither side cited, the Second Circuit provides the reason why:

"because 'altering the effective date of a duly promulgated standard could be, in substance,

tantamount to an amendment or rescission of the [rule.]'"  Sierra Club v. Jackson, 2011 WL

4852208, at *2 (quoting NRDC v. Abraham, 355 F.3d at 194) (alteration in original).

   But the reasoning set forth in Abraham raised a new question in this case:

> [I]f a suspension or delayed implementation constitutes a
> substantive rulemaking for the reason stated by NRDC v.
> Abraham, then the question arises why, at least under the Clean Air
> Act, any challenge to such a rule — including a challenge
> regarding the requirements of notice and comment — should not
> be raised in the court of appeals rather than in this Court?

Sierra Club v. Jackson, 2011 WL 4852208, at *2.  In view of that unaddressed issue, the Court

directed the parties to file supplemental memoranda on three questions:

      (1)     Is it Sierra Club's position that the Delay Notice is a rule because it operates as an amendment or rescission of the Boiler Rule and the CISWI Rule?

      (2)     If so, then why does Sierra Club's first claim not fall within the court of appeals' exclusive jurisdiction under 42 U.S.C. § 7607(b)(1) to review an amendment or rescission of the Boiler Rule and the CISWI Rule?

      (3)     If not, then on what authority does Sierra Club rely for the proposition that EPA was required to provide notice and an opportunity for comment before issuing the Delay Notice?

Id. at 3.

The parties made clear in their supplemental briefing that neither side contends that the Delay Notice operates as an amendment or rescission of the Boiler Rule or the CISWI Rule. See Pl. Supp. at 1 ("EPA's Delay Notice is neither an amendment nor a rescission of the delayed rules."); Def. Supp. Response at 2 (The Delay Notice "is only a temporary procedural device . . . that maintains the status quo[.]"); see also Intervenor Supp. Response at 1 n.1 (The Delay Notice "preserv[es] the status quo until administrative reconsideration or judicial review is complete."). According to the parties, the Delay Notice is a temporary stay that makes no change to the substantive requirements of either the Boiler Rule or the CISWI Rule. See Pl. Supp. at 4, 6; Def. Supp. Response at 2.

The Court finds no reason to disagree with the parties' characterization. Consequently, the Court need not revisit its prior decision denying EPA's motion to dismiss for lack of subject matter jurisdiction. The issue raised by the Second Circuit in NRDC v. Abraham is not implicated here. Instead, because EPA's Delay Notice was issued under the APA and because all agree that the Delay Notice does not operate as an amendment or rescission of a

Clean Air Act rule, it is subject to judicial review in this Court under 28 U.S.C. § 1331.  See

Sierra Club v. Jackson, 2011 WL 4448610, at *11.

## III.  THE MERITS

EPA's Delay Notice is subject to review by this Court under the standard set forth

in Section 706 of the APA.  "The standard of review under Section 706 of the APA is a highly

deferential one.  It presumes agency action to be valid."  Air Transport Ass'n of Am., Inc. v.

National Mediation Bd., 719 F. Supp. 2d 26, 30 (D.D.C. 2010) (quotations omitted),

aff'd, Nos. 10-5253, 10-5254, 10-5255, 2011 WL 6266355, at *1 (D.C. Cir. Dec. 16, 2011).

Nevertheless, the Court "must reject agency action if it is 'arbitrary, capricious, an abuse of

discretion, or otherwise not in accordance with law.'"  Id. (quoting 5 U.S.C. § 706(2)(A)).  The

Court also must reject agency action if it is "in excess of statutory jurisdiction, authority, or

limitations, or short of statutory right[.]"  5 U.S.C. § 706(2)(C).

As the Supreme Court has stated, an agency action is arbitrary and capricious if

the agency

> relied on factors which Congress has not intended it to consider,
> entirely failed to consider an important aspect of the problem,
> offered an explanation for its decision that runs counter to the
> evidence before the agency, or is so implausible that it could not be
> ascribed to a difference in view or the product of agency expertise.

Air Transport Ass'n of Am., Inc. v. National Mediation Bd., 719 F. Supp. 2d at 30 (quoting

Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983)).

Although review under Section 706 is "narrow," the agency "must examine the relevant data and

articulate a satisfactory explanation for its action including a 'rational connection between the

facts found and the choice made.'"  Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. at 43 (quoting Burlington Truck Lines v. United States, 371 U.S. 156, 168 (1962)).

   The parties have filed cross-motions for summary judgment.  Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment may be granted if "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c)(1)(A); see id. Fed. R. Civ. P. 56(a).  But where, as here, a case involves review of a final agency action under the APA, "the Court's role is limited to reviewing the administrative record, so the standard set forth in Rule 56(c) does not apply."  Air Transport Ass'n of Am., Inc. v. National Mediation Bd., 719 F. Supp. 2d at 32.

> Under the APA, it is the role of the agency to resolve factual issues to arrive at a decision that is supported by the administrative record, whereas the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did. . . . Summary judgment serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review, but the normal summary judgment standard does not apply.

Id. (quotations and citations omitted).

   Sierra Club argues that it is entitled to summary judgment on all three of its claims and requests that the Court declare the Delay Notice unlawful and vacate it.  First, Sierra Club contends that the Delay Notice is unlawful because EPA promulgated it without providing the public with notice and an opportunity for comment.  See PMSJ at 14-15.  Second, Sierra

10

Club contends that EPA lacked the authority to issue the Delay Notice.  See id. at 15-19.  And third, Sierra Club contends that the Delay Notice is arbitrary and capricious for "at least four reasons, each of which independently requires vacatur."  Id. at 21.

EPA opposes Sierra Club's motion for summary judgment and has filed its own cross-motion for summary judgment.  See generally DMSJ.  As EPA describes it, the agency had the authority to promulgate the Delay Notice; the agency provided adequate justification for the Delay Notice; and the Delay Notice is not a rule and therefore is not subject to notice and comment requirements.

In the discussion that follows, the Court first will address the question whether EPA had the authority to issue the Delay Notice under 5 U.S.C. § 705 of the APA (Claim 2).  Concluding that EPA did have such authority, the Court then addresses the question whether EPA was required to provide notice and an opportunity for comment before issuing the Delay Notice (Claim 1).  The Court concludes that the Delay Notice — as both sides agree, a temporary stay under 5 U.S.C. § 705 to preserve the status quo — is not subject to notice and comment requirements.  Finally, the Court addresses the question whether the Delay Notice is arbitrary and capricious (Claim 3).  The Court concludes that it is and therefore will vacate the Delay Notice and remand the Delay Notice to EPA for further proceedings consistent with this Opinion.

*A. Authority to Issue the Delay Notice Under Section 705 of the APA (Claim 2)*

1.  Relevant Statutes and Procedural Background in Civil Action No. 01-1537

The question whether EPA had the authority to issue the Delay Notice under Section 705 of the APA requires an examination of various statutory provisions that the Court

11

discusses below.  In this section, the Court also provides background relating to the court-ordered

deadlines in Civil Action No. 01-1537 that led to the promulgation of the Boiler Rule and the

CISWI Rule.

   *a. Statutory and Court-Ordered Deadlines.*  In 1990, Congress enacted sweeping

revisions to the Clean Air Act and "imposed a technology-based, emission-control scheme that

limited EPA's discretion and that set strict requirements and deadlines for the promulgation of

emission standards." Sierra Club v. Jackson, 2011 WL 181097, at *2.  The Clean Air Act

established a statutory deadline of November 15, 2000 by which EPA was to have promulgated

emission standards like the Boiler Rule and the CISWI Rule — that is, emission standards for

sources accounting for ninety percent of the aggregate emissions of especially dangerous

hazardous air pollutants.  See Sierra Club v. Johnson, 444 F. Supp. 2d at 49-50.  EPA, however,

failed to meet this statutory deadline.  See id.; see also Sierra Club v. Jackson, 2011 WL 181097,

at *3.  So in 2001 Sierra Club filed seven different complaints against EPA, each seeking relief

for EPA's failure to discharge its regulatory duties under the Clean Air Act; these seven cases

were consolidated before this Court under Civil Action No. 01-1537.  See Sierra Club v. Jackson,

2011 WL 181097, at *3.

   In 2005 the parties filed cross-motions for summary judgment in Civil Action

No. 01-1537.  EPA did not contest the issue of liability: it admitted that it had failed to

promulgate regulations by the statutory deadline of November 15, 2000.  Sierra Club v . Jackson,

2011 WL 181097, at *3.  Accordingly, the only matter before the Court at that time was to

fashion an appropriate equitable remedy.  Id.  On March 31, 2006, the Court issued an Order

denying EPA's motion for summary judgment and granting summary judgment in favor of Sierra

Club.  Id.  The Court ordered EPA to fulfill its statutory duties on a prescribed schedule that

would "'best preserve the intent of Congress in enacting the 1990 Clean Air Act Amendments,

without calling upon defendants to do the impossible.'"  Id. (quoting Sierra Club v. Johnson,

444 F. Supp. 2d at 61).  Under that prescribed schedule, "EPA was to have fully discharged all of

its statutory duties by June 15, 2009."  Id. at *1.

   After the Court issued its March 31, 2006 Order, however, the Court granted a

number of EPA's motions to extend its court-ordered deadlines, all without opposition from

Sierra Club.  Sierra Club v. Jackson, 2011 WL 181097, at *1.  Thus, after these amendments, the

Court's March 31, 2006 Order required, in relevant part, that EPA fully discharge its statutory

duties by issuing its overdue Clean Air Act rules by January 21, 2011.  See id.  As EPA described

it, in order to discharge its statutory duties the agency needed to complete additional emission

standards for "(1) certain area source boilers, (2) major source boilers, and (3) . . . CISWI . . .

units (collectively, 'the Three Air Rules')."  Id. at *4.

   In December 2010, EPA requested that the Court extend the January 21, 2011

deadline for the promulgation of the Three Air Rules to April 13, 2012 so that EPA could

re-propose those rules.  See Sierra Club v. Jackson, 2011 WL 181097, at *1, *4-5.  That request

was opposed by Sierra Club.  Id.  Because EPA did not meet its heavy burden of demonstrating

that it would be impossible to promulgate substantively adequate rules by January 21, 2011, the

Court denied EPA's request for an extension of time until April 13, 2012 so that EPA could

re-propose the Three Air Rules.  Id. at *11.  But the Court extended the January 21, 2011

deadline one month, to February 21, 2011, so that EPA would be able to respond to significant

comments regarding the Three Air Rules.  See id. at *14.

In accordance with the Court's January 20, 2011 Order, EPA signed the Boiler Rule and the CISWI Rule on February 21, 2011.  See Sierra Club v. Jackson, 2011 WL 4448610, at *2.  But as discussed, on May 18, 2011, two days before the Boiler Rule and the CISWI Rule were to go into effect, EPA issued its Delay Notice, staying the effective date of both rules "until the proceedings for judicial review of these rules [in the court of appeals] are completed or the EPA completes its reconsideration of the rules, whichever is earlier[.]"  76 FED. REG. at 28,664.

      *b.  Effective Dates — Section 112(d)(10) and Section 129(f) of the Clean Air Act.*  Section 112(d)(10) governs the effective date for hazardous air pollutant standards like the Boiler Rule.  See 42 U.S.C. § 7412(d)(10).  Such standards "shall be effective upon promulgation."  Id.

      Section 129(f) of the Clean Air Act governs the effective date for hazardous air pollutants standards like the CISWI Rule.  See 42 U.S.C. § 7429(f).  Under Section 129(f), emission standards "applicable to new solid waste incineration units shall be effective as of the date 6 months after the date of promulgation."  42 U.S.C. § 7429(f)(1).  As for existing solid waste incineration units, Section 129(f) provides that standards "shall be effective as expeditiously as practicable after approval of a State plan under subsection (b)(2) of this section . . . but in no event later than 3 years after the State plan is approved or 5 years after the date such standards or requirements are promulgated, whichever is earlier."  42 U.S.C § 7429(f)(2).

      *c.  Agency and Judicial Review — Section 307 of the Clean Air Act.*  In 1977, Congress added to the Clean Air Act specific procedures for agency and judicial review of emission standards.  See generally 42 U.S.C. § 7607.  Section 307(b), titled "Judicial review," provides that "[t]he filing of a petition for reconsideration by the Administrator of any otherwise

final rule or action . . . shall not postpone the effectiveness of such rule or action."  42 U.S.C.

§ 7607(b)(1); <u>see</u> PMSJ at 4.

Section 307(d) of the Clean Air Act, titled "Rulemaking," states that certain

rulemaking provisions of the APA, as well as the APA's scope-of-review standard, do not apply

to the requirements of Section 307(d).  <u>See</u> 42 U.S.C. § 7607(d)(1).  Specifically, Section

307(d)(1) provides:

> The provisions of section 553 through 557 and section 706 of
> Title 5 [of the APA] shall not, except as expressly provided in this
> subsection, apply to actions to which this subsection applies.  This
> subsection shall not apply in the case of any rule or circumstance
> referred to in subparagraphs (A) or (B) of subsection 553(b) of
> Title 5.

42 U.S.C. § 7607(d)(1).

A later provision within the rulemaking subsection of the Clean Air Act, Section

307(d)(7)(B), then reaffirms that "reconsideration shall not postpone the effectiveness of [a]

rule," but it further provides that "[t]he effectiveness of [a] rule may be stayed during such

reconsideration . . . by the Administrator or the court for a period not to exceed three months."

42 U.S.C. § 7607(d)(7)(B).

*d.  Relief Pending Review — Section 705 of the APA.*  Section 705 of the APA

was originally enacted in 1946.  <u>See</u> ADMINISTRATIVE PROCEDURE ACT, PUB. L. NO. 79-404,

60 STAT. 243.  Titled "Relief pending review," this section of the APA provides:

> When an agency finds that justice so requires, it may postpone the
> effective date of action taken by it, pending judicial review.  On
> such conditions as may be required and to the extent necessary to
> prevent irreparable injury, the reviewing court, including the court
> to which a case may be taken on appeal from or on application for
> certiorari or other writ to a reviewing court, may issue all necessary

and appropriate process to postpone the effective date of an agency
action or to preserve the status or rights pending conclusion of the
review proceedings.

5 U.S.C. § 705.[4]

## 2.   The Parties' Arguments

Under the Clean Air Act, the Boiler Rule and the CISWI Rule each have specified

effective dates.  See 42 U.S.C. § 7412(d)(10); id. § 7429(f)(1)-(2).  As Sierra Club sees it, the

Clean Air Act expressly limits EPA's authority to postpone the effectiveness of those rules:

EPA may stay the effective date of those rules *only* "during . . . reconsideration . . . for a period

not to exceed three months."  42 U.S.C. § 7607(d)(7)(B).  Sierra Club argues that this statutory

three-month limitation on stays during reconsideration eliminates EPA's authority to stay rules

under 5 U.S.C. § 705 of the APA; thus EPA acted without authority, and in violation of the

Clean Air Act, when it issued the Delay Notice under 5 U.S.C. § 705.  See PMSJ at 15-19.

Moreover, Sierra Club contends that the court of appeals' decision in NRDC v. Reilly, 976 F.2d

36 (D.C. Cir. 1992), is dispositive, making clear that EPA cannot use the authority provided by

Section 705 of the APA to stay the effectiveness of the Boiler Rule and CISWI Rule.  See PMSJ

at 16.

---

[4]       The current version of Section 705 of the APA was enacted in 1966.  See PUB. L.
NO. 89-554, 80 STAT. 393.  A comparison of the current version of Section 705 with the
1946 version reveals that they differ only stylistically.  Compare 5 U.S.C. § 705, with
ADMINISTRATIVE PROCEDURE ACT, PUB. L. NO. 79-404, 60 STAT. 243 ("INTERIM RELIEF.
— Pending judicial review any agency is authorized, when it finds that justice so requires, to
postpone the effective date of any action taken by it.  Upon such conditions as may be required
and to the extent necessary to prevent irreparable injury, every reviewing court (including every
court to which a case may be taken on appeal from or upon application for certiorari or other writ
to a reviewing court) is authorized to issue all necessary and appropriate process to preserve
status or rights pending conclusion of the review proceedings.").

EPA disagrees.  It contends that the Clean Air Act does not limit the agency's authority to stay the Boiler Rule and the CISWI Rule under 5 U.S.C. § 705 of the APA; consequently, EPA asserts that it acted within its authority when it issued the Delay Notice.  See DMSJ at 7-11.  EPA acknowledges that Section 307(d)(7)(B) of the Clean Air Act limits the agency's authority to stay rules during reconsideration "for a period not to exceed three months," 42 U.S.C. § 7607(d)(7)(B), a time that since has passed in this case.  See Sierra Club v. Jackson, 2011 WL 4448610, at *11.  But according to EPA, Section 307(d)(7)(B) "does not address, much less eliminate, the authority of the [a]gency or the D.C. Circuit to stay the effectiveness of any covered rule, including emission standards, pending litigation."  DMSJ at 8.

In support of its argument, EPA relies on Section 307(d)(1) of the Clean Air Act. See DMSJ at 8; see also 76 FED. REG. at 28,663.  As discussed above, that subsection of the Clean Air Act provides, in relevant part:

> The provisions of section 553 through 557 and section 706 of Title 5 [of the APA] shall not, except as expressly provided in this subsection, apply to actions to which this subsection applies.  This subsection shall not apply in the case of any rule or circumstance referred to in subparagraphs (A) or (B) of subsection 553(b) of Title 5.

42 U.S.C. § 7607(d)(1).  EPA asserts: "Plainly, Congress could have, but did not, include section 705 [of the APA] in [those] exclusion[s]."  DMSJ at 8.  Thus, EPA concludes that, although Section 307(d)(7)(B) of the Clean Air Act establishes the only process by which the agency can stay the effectiveness of emission standards pending reconsideration, the Clean Air Act does not limit the agency's authority to stay emission standards pending judicial review under Section 705 of the APA.  See DMSJ at 11.  Finally, EPA argues that NRDC v. Reilly, the primary case upon

17

which Sierra Club relies, is inapposite because the court of appeals in that case did not address

EPA's authority to stay a rule under Section 705 of the APA.  See DMSJ at 10-11.

### 3.  NRDC v. Reilly

EPA argued in NRDC v. Reilly that it had the authority to suspend its standards

under Section 301(a)(1) of the Clean Air Act — that is, pursuant to its "general authority to

'prescribe such regulations as are necessary to carry out . . . functions under [the Clean Air

Act.]'"  NRDC v. Reilly, 976 F.2d at 40 (quoting 42 U.S.C. § 7601(a)(1)).  The court of appeals

disagreed.  It held that "both the language and purpose of the [Clean Air] Act and the 1990

Amendments preclude the authority claimed by the EPA to stay the effectiveness of the

standards."  Id.  Rejecting EPA's claimed authority under Section 301(a)(1) to stay its rules, the

court of appeals concluded that EPA "had no authority to stay the effectiveness of a promulgated

standard except for the single, three-month period authorized by section 307(d)(7)(B) of the

[Clean Air Act.]"  NRDC v. Reilly, 976 F.2d at 41.  The court of appeals vacated EPA's stay

"[b]ecause the EPA did not possess the authority to stay emission standards prior to the passage

of the 1990 Amendments, and because the Amendments do not empower the EPA to suspend the

application of radionuclide standards[.]"  Id. at 41.

Although the court of appeals in NRDC v. Reilly used broad language in its

opinion — stating that EPA "had no authority to stay the effectiveness of a promulgated standard

except for the single, three-month period authorized by section 307(d)(7)(B) of the Clean Air

Act," NRDC v. Reilly, 976 F.2d at 41 — the court specifically did not address whether EPA

would have had the authority to stay its radionuclides standards under 5 U.S.C. § 705 because,

18

for a reason not stated in the court's opinion, that ground "was not urged on appeal." Id. at 39.

As the court noted, "[o]n appeal, the EPA relie[d] exclusively on the [Clean Air] Act for its

authority to suspend the standards." Id. at 40; see also Cablevision Sys. Corp. v. FCC, 649 F.3d

695, 705 (D.C. Cir. 2011) (stating that the court of appeals in NRDC v. Reilly held that "EPA

could not use its general grant of rulemaking authority [under the Clean Air Act] to stay

regulations subject to a statutory deadline"). Thus, while the facts in NRDC v. Reilly are quite

similar to those here, that case does not resolve the novel, disputed question now before this

Court because the court of appeals in NRDC v. Reilly had no occasion to address whether the

Clean Air Act precludes the use of 5 U.S.C. § 705 to stay Clean Air Act emission standards

pending judicial review — a different question, involving an analysis of different statutory

provisions, from the one presented in NRDC v. Reilly. This Court therefore concludes that the

court of appeals' decision in that case is not dispositive.

### 4. Statutory Interpretation

Since NRDC v. Reilly does not control, the Court must look at the language of the

relevant statutes to resolve the question presented by Sierra Club's second claim: whether EPA

lacked the authority to issue the Delay Notice under Section 705 of the APA because the Clean

Air Act precludes the exercise of such authority. As noted, the Clean Air Act set specific

effective dates for emission standards. See 42 U.S.C. § 7412(d)(10); id. § 7429(f). The Boiler

Rule shall be "effective upon promulgation." Id. § 7412(d)(10). The CISWI Rule has effective

dates that differ for existing and new solid waste incineration units. Id. § 7429(f). The parties

agree that, under Section 307(d)(7)(B) of the Clean Air Act, EPA has the authority to stay the

effective dates of both the Boiler Rule and the CISWI Rule during reconsideration for a period up to three months.  See id. § 7607(d)(7)(B).  But the parties disagree on whether Section 307(d)(7)(B) provides the *only* authority upon which EPA can rely to stay those effective dates. EPA argues that it also can invoke Section 705 of the APA to stay effective dates of emission standards pending judicial review; Sierra Club vigorously disagrees.

        The Court concludes that the language of the Clean Air Act does not on its face provide a clear answer.  Rather, the Act is ambiguous on the issue because (1) it does not directly address whether its three-month limitation on stays during *reconsideration proceedings* under Section 307(d)(7)(B) of the Act eliminates EPA's authority to stay rules pending *judicial review* under Section 705 of the APA; and (2) it specifically states that certain sections of the APA do not apply to Section 307(d) of the Clean Air Act — the rulemaking subsection that limits stays during reconsideration to three months — but that subsection omits any reference to Section 705 of the APA.  See 42 U.S.C. § 7607(d)(1).  The question therefore becomes — looking at "other indicia of congressional intent" and the "broader context of the statute as a whole," Petties v. District of Columbia, 538 F. Supp. 2d 88, 95-96 (D.D.C. 2008) (quotations omitted) — what inference, if any, should be drawn from the omission of Section 705 from the list of APA exclusions set forth in Section 307(d)?

        As noted, Section 307(d) of the Clean Air Act states, in relevant part: "The provisions of section 553 through 557 and section 706 of Title 5 shall not, except as expressly provided in this subsection, apply to actions to which this subsection applies."  42 U.S.C. § 7607(d)(1).  Although Sierra Club cautions that congressional intent cannot easily be presumed from statutory omission, see PMSJ Reply at 10, the Court finds significant the omission of Section 705 of the APA from the list of exclusions.

20

If Section 307(d)(7)(B) of the Clean Air Act were the exclusive means of staying the effectiveness of a Clean Air Act rule, then both EPA and a court would be barred from staying a rule pending judicial review.  While Sierra Club contends that this case does not implicate judicial authority to stay Clean Air Act rules, see PMSJ Reply at 12-14, there really is no principled way to distinguish between agency authority and judicial authority under either the Clean Air Act or the APA.  Section 307(d)(7)(B) provides that the effectiveness of a Clean Air Act rule may be stayed during reconsideration "*by the Administrator or the court* for a period not to exceed three months."  42 U.S.C. § 7607(d)(7)(B) (emphasis added).  As that text makes clear, Section 307(d)(7)(B) provides the same restraints on a court's ability to issue a stay as it does on EPA: stays may only be for purposes of reconsideration and may last no longer than three months.  Thus, if EPA has no authority to stay rules under the Clean Air Act except as expressly provided in Section 307(d)(7)(B), then neither does a court.  And under the logic of Sierra Club's interpretation of the relevant statutory provisions, both EPA and a court would lack authority to resort to Section 705 of the APA to issue stays pending judicial review of a Clean Air Act rule.

The Court concludes that this is not what Congress intended.  Sierra Club's unpersuasive reasoning aside, see PMSJ Reply at 12-14, one cannot find a principled analysis by which to preserve the courts' authority to grant stays pending judicial review under Section 705 while simultaneously concluding that the agency has been deprived of such authority.  While the Clean Air Act establishes the process by which either EPA or a court may stay the effectiveness of a rule pending reconsideration, it does not by its terms or by logical implication limit the authority of either an agency or a court to exercise its traditional statutory authority under Section 705 of the APA to stay such rules or regulations pending judicial review.  See

21

Sampson v. Murray, 415 U.S. 61, 68 n.15 (1974) (stating that Congress intended Section 705 of

the APA primarily to "reflect existing law under the Scripps-Howard doctrine" that provides that

federal courts, "'as part of [their] traditional equipment for the administration of justice,'" can

stay the enforcement of a judgment pending the outcome of judicial review) (quoting

Scripps-Howard Radio, Inc. v. FCC, 316 U.S. 4, 9-10 (1942)); see also In re GTE Serv. Corp.,

762 F.2d 1024, 1026 (D.C. Cir. 1985); Affinity Healthcare Servs., Inc. v. Sebelius, 720 F. Supp.

2d 12, 15 n.4 (D.D.C. 2010); Kansas v. United States, Civil Action No. 00-4153, 2000 WL

1665260, at *4 (D. Kan. Sept. 29, 2000); cf. Turtle Island Restoration Network v. U.S.

Department of Commerce, 438 F.3d 937, 944 (9th Cir. 2006).

   As the Supreme Court recently has reaffirmed, the power of federal courts to grant

stays pending judicial review is "'firmly embedded in our judicial system,' 'consonant with the

historic procedures of federal . . . courts,' and 'a power as old as the judicial system of the

nation.'" Nken v. Holder, 556 U.S. 418, 129 S. Ct. 1749, 1757 (2009) (quoting Scripps-Howard

Radio, Inc. v. FCC, 316 U.S. at 13).  Although Congress can restrict the courts' authority to stay

rules pending judicial review under Section 705 of the APA, Congress has shown that when it

wants to limit that power it will do so expressly.  See, e.g., MAGNUSON-STEVENS FISHERY

CONSERVATION AND MANAGEMENT ACT, 16 U.S.C. § 1855(f)(1)(A) (stating, in subsection titled

"Judicial review" that "section 705 of [the APA] is not applicable"); Pacific Coast Fed'n of

Fishermen's Ass'n v. Secretary of Commerce, 494 F. Supp. 626, 628 (N.D. Cal. 1980) (under the

Fishery Conservation and Management Act plaintiffs were not entitled to a stay because

Congress explicitly foreclosed the use of 5 U.S.C. § 705); see also 16 U.S.C. § 3636(c) (stating,

in subsection titled "Judicial review" that "section 705 of [the APA] is not applicable");

15 U.S.C. § 3416(b) (stating, in subsection titled "Review of rules and orders," that "the second sentence of section 705 [of the APA] shall not apply").  Compare 42 U.S.C. § 7607(d)(1) ("The provisions of section 553 through 557 and section 706 of Title 5 shall not, except as expressly provided in this subsection, apply to actions to which this subsection applies.").  Indeed, the Clean Air Act itself, in a provision relating to one limited and discrete area — the assessment of noncompliance penalties — expressly precludes a court from granting "any stay, injunctive, or similar relief[.]"  42 U.S.C. § 7607(g).

Without clearer evidence of congressional intent than that suggested by Sierra Club, the Court is unwilling to infer a congressional policy that would deprive both an agency and the federal courts of their traditional authority to stay rules pending judicial review as codified in Section 705 of the APA.  Compare Nken v. Holder, 129 S. Ct. at 1760 ("[W]e are loath to conclude that Congress would, without clearly expressing such a purpose, deprive the Court of Appeals of its customary power to stay orders under review." ) (quotations omitted), Scripps-Howard Radio, Inc. v. FCC, 316 U.S. at 15 ("Unless Congress explicitly discloses such an intention we should not lightly attribute to it a desire to withhold from a reviewing court the power to save the public interest from injury or destruction while an appeal is being heard.  To do so would stultify the purpose of Congress to utilize courts as a means for vindicating the public interest."), and id. at 17 ("Where Congress wished to deprive the courts of this historic power [to stay], it knew how to use apt words[.]"), with Pacific Coast Fed'n of Fisherman's Ass'n v. Secretary of Commerce, 494 F. Supp. at 627 (holding that the Fishery Conservation and Management Act places "explicit bounds on [a court's] review function," expressly precluding the issuance of a stay under 5 U.S.C. § 705).

23

Finally, in resolving this question, the Court considers useful the canon of statutory construction *expresio unius est exclusio alterius*, that is, "when Congress enacts specific limitations in a general statute it is presumed to allow other circumstances not included in those limitations[.]" Alegria v. District of Columbia, 391 F.3d 262, 266 (D.C. Cir. 2004); see Michigan Citizens for an Independent Press v. Thornburgh, 868 F.2d 1285, 1293 (D.C. Cir. 1989) ("[I]f Congress banned the importation of apples, oranges, and bananas from a particular country, the canon of *expresio unius est exclusio alterius* might well indicate that Congress *did not* intend to ban the importation of grapefruits.") (emphasis in original); see also Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993) (applying canon of *expresio unius est exclusio alterius* to interpretation of Rule 9(b) of the Federal Rules of Civil Procedure).  As discussed, Section 307(d)(1) of the Clean Air Act provides that certain sections of the APA do not apply to the Clean Air Act, but omits from that list of exclusions any reference to Section 705 of the APA.  Thus, this canon of construction supports EPA's view that by omitting reference to Section 705 of the APA in the rulemaking subsection of the Clean Air Act, Congress did not intend to prohibit EPA or the federal courts from staying the effective date of emission standards pending judicial review under Section 705 of the APA.

The Court therefore concludes that EPA had the authority to issue the Delay Notice under Section 705 of the APA.  The Court will grant EPA's motion for summary judgment on Claim 2 and will deny Sierra Club's motion for summary judgment on that claim.

### B.  Notice and an Opportunity for Comment (Claim 1)

The APA defines a "rule" as "the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe

law or policy or describing the organization, procedure, or practice requirements of an agency[.]" 5 U.S.C. § 551(4).  Under the APA, an agency undergoing rulemaking, defined as "agency process for formulating, amending, or repealing a rule," 5 U.S.C. § 551(5), "must first publish notice of the proposed rulemaking in the Federal Register[.]"  <u>Select Specialty Hosp.-Akron, LLC v. Sebelius</u>, Civil Action No. 10-0926, 2011 WL 5042021, at *8 (D.D.C. Oct. 25, 2011). "After giving the appropriate notice, the agency must give 'interested persons' an opportunity to comment on the proposed rule."  <u>Id</u>. (citing 5 U.S.C. § 553(c)).  Notice and comment, however, are "not required when the agency is promulgating 'interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice.'"  <u>Id</u>. (citing 5 U.S.C. § 553(b)(A)).  Nor are notice and comment required "'when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest.'" <u>Id</u>. (quoting 5 U.S.C. § 553(b)(B)).

   Sierra Club contends that the Delay Notice is unlawful because it is a substantive rule that EPA promulgated without providing the public with notice and an opportunity for comment.  <u>See</u> PMSJ at 14-15.  As discussed, however, Sierra Club expressly acknowledges that the Delay Notice does not operate as an amendment or rescission of the Boiler Rule or CISWI Rule.  Pl. Supp. at 1.  Sierra Club states that "[t]he Delay Notice's function and purpose are well-defined, and not consistent with either an amendment or a rescission: the Delay Notice temporarily relieves industry from the burdens (and deprives the public of the benefits) associated with" the Boiler Rule and CISWI Rule.  <u>Id</u>. at 3.  Nevertheless, Sierra Club contends that the Delay Notice — a temporary stay that "makes no change to the substantive requirements

25

of either rule," id. at 4 — is still subject to notice and comment requirements, and EPA failed to comply with those requirements.  See id. at 9-11

EPA counters that the Delay Notice is not a rule.[5]  As EPA describes it, the Delay Notice is a temporary device that "serves only to maintain the status quo until the earlier of resolution of the litigation or completion of the ongoing reconsideration proceedings."  DMSJ at 12.  As such, the Delay Notice does not "implement, interpret, or prescribe law or policy," 5 U.S.C. § 551(4), and therefore it is not subject to notice and comment requirements.  See DMSJ at 12.

Sierra Club's first claim presents the initial question "whether a suspension of delayed implementation of a final regulation constitutes substantive rulemaking."  Sierra Club v. Jackson, 2011 WL 4852208, at *2.  As the Court previously stated,

> [t]he case law suggests that normally it does.  See Environmental Defense Fund v. EPA, 716 F.2d 916, 920 (D.C. Cir. 1983) (citing Environmental Defense Fund v. Gorsuch, 713 F.2d 802, 816 (D.C. Cir. 1983); NRDC v. U.S. EPA, 683 F.2d 752, 761 (3d Cir. 1982)); and Council of S. Mountains, Inc. v. Donovan, 653 F.2d 573, 580 n.28 (D.C. Cir. 1981)); Ranchers Cattlemen Action Legal Fund v. U.S. Department of Agric., 566 F. Supp. 2d 995, 1004 (D.S.D. 2008); see also Public Citizen v. Department of Health & Human Servs., 671 F.2d 518, 520 (D.C. Cir. 1981) (Edwards, J., dissenting) ("Certainly a decision to suspend indefinitely regulations that are the product of exhaustive study and comprehensive rulemaking, in order to allow a wholesale reevaluation of a major regulatory program, cannot be viewed as a temporary measure for preserving the status quo.").  Consequently, that type of agency action normally requires notice and an opportunity for comment.  See, e.g., Environmental Defense Fund v. Gorsuch, 713 F.2d at 818.

Sierra Club v. Jackson, 2011 WL 4852208, at *2.

---

[5]     EPA does not argue in the alternative that the Delay Notice is a rule to which notice and comment requirements do not apply; nor does EPA argue that good cause should excuse notice and comment requirements.  See PMSJ Reply at 6 n.1; see also Pl. Supp. at 10 n.11.

As the Second Circuit stated in NRDC v. Abraham, however, the reason that the suspension or delayed implementation of a rule normally constitutes substantive rulemaking is because "altering the effective date of a duly promulgated standard could be, in substance, tantamount to an amendment or rescission of the [rule.]"  NRDC v. Abraham, 355 F.3d at 194; see also Public Citizen v. Steed, 733 F.2d 93, 98 (D.C. Cir. 1984) (holding that agency's suspension of rule was "a paradigm of a revocation," constituting "a 180 degree reversal of [the agency's] former views as to the proper course") (quotations and citation omitted); NRDC v. U.S. EPA, 683 F.2d at 763 n.23 ("[A]n indefinite postponement which is never terminated is tantamount to a revocation.").

Sierra Club expressly has disclaimed any argument that the Delay Notice operates as an amendment or rescission of the Boiler Rule or CISWI Rule; the Delay Notice "makes no change to the substantive requirements of either rule."  Pl. Supp. at 4.  Thus, Sierra Club does not disagree with EPA's characterization of the Delay Notice as "a temporary procedural device . . . that maintains the status quo with respect to boilers and CISWI units[.]"  Def. Supp. Response at 2; see Pl. Supp. at 3 (stating that "the Delay Notice's function and purpose are well-defined"); id. 3-4 (stating that the Delay Notice "temporarily" suspends the effectiveness of the rules, but "does not affect either the rules' standards or their compliance dates").  Relying on Council of S. Mountains v. Donovan, Sierra Club nevertheless argues that notice and comment are required "even where the suspension is temporary, for a definite period of time, and relatively short."  Pl. Supp. at 10 (citing Council of S. Mountains v. Donovan, 653 F.2d at 573).

The central question, however, "is not the length of the stay or its temporary nature," but rather whether the stay of the Boiler Rule and the CISWI Rule constitutes

27

substantive rulemaking.  Sierra Club v. Jackson, 2011 WL 4852208, at *2; see Council of S.

Mountains v. Donovan, 653 F.2d at 582; Environmental Defense Fund, Inc. v. Gorsuch, 713 F.2d

at 818.  And on that question, the court of appeals' opinion in Council of S. Mountains v.

Donovan is unhelpful to Sierra Club.  In that case, the court of appeals concluded that an agency

order altering implementation of certain mine safety regulations by deferring a compliance

deadline for six months "was in effect *an amendment to* a mandatory safety standard." Council

of S. Mountains v. Donovan, 653 F.2d at 579 n.26 (emphasis added); see id. at 582 n.40 (same).

The court of appeals agreed with the proposition, undisputed by the government agency, that the

agency order — which moved a compliance deadline from December 21, 1980 to June 21, 1981

so that coal mine operators would have more time to make available to miners life-saving

equipment for use during emergencies, see 45 FED. REG. 80,501, at 80,501-02 (Dec. 5, 1980) —

was a substantive rule subject to notice and comment requirements. See id. at 580 & n.28.[6]

  In contrast, Sierra Club argues that the Delay Notice does *not* operate as an

amendment to the Boiler Rule or the CISWI Rule.  See Pl. Supp. at 4.  Instead, the Delay Notice

simply preserves the status quo.  A temporary stay to preserve the status quo does not constitute a

substantive rulemaking because, by definition, it is not "designed to implement, interpret, or

---

  [6] The court of appeals ultimately concluded that the agency's failure to comply with
notice and comment requirements was excused for good cause.  See Council of S. Mountains,
Inc. v. Donovan, 653 F.2d at 582 (holding that "the Secretary had good cause to dispense with
notice and comment before issuing his . . . order"); see also 5 U.S.C. § 553(b)(3)(B) (creating a
narrow exception to the notice and comment requirements when an "agency for good cause finds
(and incorporates the finding and a brief statement of reasons therefor in the rules issued) that
notice and public procedure thereon are impracticable, unnecessary, or contrary to the public
interest").  In this case, EPA did not invoke the good cause exception in issuing the Delay Notice.
Nor has EPA ever argued in its papers that the good cause exception should apply.  See supra
at 26 n.5.

prescribe law or policy[.]"  5 U.S.C. § 551(4); cf. Public Citizen v. Department of Health & Human Servs., 518 F.2d at 520 (Edwards, J., dissenting) (distinguishing "a decision to suspend indefinitely regulations that are the product of exhaustive study and comprehensive rulemaking, in order to allow wholesale reevaluation of a major regulatory program," from "a temporary measure for preserving the status quo").  Such a stay is not designed to do anything other than preserve the status quo.  See 5 U.S.C. § 705.

Consequently, the Court concludes that the Delay Notice does not constitute substantive rulemaking, see 5 U.S.C. § 551(4), and therefore is not subject to notice and comment requirements.  See id. §§ 553(b), (c).  The Court will grant EPA's motion for summary judgment on Claim 1 and will deny Sierra Club's motion for summary judgment on that claim.

### C.  Justification for the Delay Notice (Claim 3)

Sierra Club argues that the Delay Notice is arbitrary and capricious for "at least four reasons, each of which independently requires vacatur."  PMSJ at 21.  Sierra Club contends that (1) EPA failed "to consider or even acknowledge the impact of [the Delay Notice] on people who are exposed to emissions from Industrial Boilers and CISWI," id. at 21; (2) EPA failed "to articulate any rational connection [between] its alleged concern for public comment opportunity and its decision not just to reconsider the Industrial Boilers and CISWI Rules but to stay them as well," id. at 22; (3) EPA failed "to link its rationale [for the Delay Notice] — EPA's voluntary reconsideration" — to the pending litigation in the court of appeals, id. at 23; and (4) EPA failed to apply or even mention the four-part test — likelihood of success on the merits; irreparable harm; balance of equities; public interest — applicable to agency stays under 5 U.S.C. § 705. PMSJ at 23.

29

EPA argues that the rationale for the Delay Notice is reasonable and should be upheld.  See DMSJ at 13.  EPA disagrees with Sierra Club that it must apply the four-part test in determining whether to stay a rule under the APA.  Instead, according to EPA, all that is required under 5 U.S.C. § 705 is a finding by the agency that "justice so requires" a stay pending judicial review.  5 U.S.C. § 705; see DMSJ at 13.

EPA explained its reasons for issuing the Delay Notice as follows:

> We find that justice requires postponing the effectiveness of these rules.  As explained in the March 21, 2011 notice[ of reconsideration, see 76 FED. REG. 15,266; AR at 186,] EPA has identified several issues in the final rules which it intends to reconsider because we believe the public did not have a sufficient opportunity to comment on certain revisions EPA made to the proposed rules.  These issues include revisions to the proposed subcategories and revisions to some of the proposed emissions limits.  In addition, EPA received data before finalizing both rules but was unable to incorporate that data into the final rules given the court deadline for issuing the rules, which the Agency was unable to extend.  EPA also notes thousands of facilities across multiple, diverse industries will need to begin to make major compliance investments soon, in light of the pressing compliance deadlines. These investments may not be reversible if the standards are in fact revised following reconsideration and full evaluation of all relevant data. . . . Since petitions for judicial review of both the Major Source Boiler MACT and the CISWI Rule have been filed, and, as explained above, justice requires a delay of the effective dates, it is reasonable for the EPA to exercise its authority to delay the effective dates of the Major Source Boiler MACT and the CISWI Rule under the APA for a period that exceeds three months.

76 FED. REG. at 28,663-64.  EPA contends that the reasons listed above provide a rational basis for its finding that justice requires staying the Boiler Rule and CISWI Rule pending the completion of the litigation in the court of appeals, or until EPA completes its reconsideration of the rules, whichever is earlier.  See id. at 28,664; see also DMSJ at 14-16.

The Court concludes that the Delay Notice is arbitrary and capricious for three separate reasons: (1) the standard for a stay at the agency level is the same as the standard for a stay of agency action by a court, and EPA has not even attempted to justify its decision under that standard; (2) EPA is bound by its own precedents to apply the four-part test for stays and injunctions unless it provides a reasoned decision for its change of position, which it has not done; and (3) because EPA relies on Section 705 authorizing it to stay agency action "pending judicial review," the reasons it articulates to justify the stay must be based on the underlying litigation in the court of appeals, which they are not.

1. Four-Part Preliminary Injunction Test — The Standard for Stays Under Section 705

The Court concludes that the standard for a stay at the agency level is the same as the standard for a stay at the judicial level: each is governed by the four-part preliminary injunction test applied in this Circuit.  See Cuomo v. U.S. Nuclear Regulatory Comm'n, 772 F.2d 972, 974 (D.C. Cir. 1985); Virginia Petroleum Jobbers Ass'n v. Federal Power Comm'n, 259 F.2d 921, 925 (D.C. Cir. 1958).  EPA, however, failed to employ or even mention this four-part test in issuing the Delay Notice.

Under 5 U.S.C. § 705,

when an agency finds that justice so requires, it may postpone the effective date of action taken by it, pending judicial review.  On such conditions as may be required and to the extent necessary to prevent irreparable injury, the reviewing court, including the court to which a case may be taken on appeal from or on application for certiorari or other writ to a reviewing court, may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings.

5 U.S.C. § 705.  In considering motions to stay agency action under 5 U.S.C. § 705, courts in this

Circuit and beyond have applied the four-part test "used to evaluate requests for interim

injunctive relief."  Affinity Healthcare Servs., Inc. v. Sebelius, 720 F. Supp. 2d at 15 n.4 (citing

Cuomo v. U.S. Nuclear Regulatory Comm'n, 772 F.2d at 974).  Thus, courts consider "(1) the

likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the

likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that

others will be harmed if the court grants the stay; and (4) the public interest in granting the stay."

Cuomo v. U.S. Nuclear Regulatory Comm'n, 772 F.2d at 974; see also Winter v. NRDC,

555 U.S. 7, 20 (2008); Munaf v. Geren, 553 U.S. 674, 689-90 (2008); Hilton v. Braunskill,

481 U.S. 770, 777 (1987).

   According to EPA, however, "[t]hat Congress chose, in the second sentence of

section 705, to make irreparable injury a predicate for a court's grant — presumably over an

agency's objection — of a judicial stay in fact indicates that neither irreparable injury nor any

other portion of the traditional judicial standard for granting preliminary relief is a predicate to an

agency's own exercise of discretion under section 705[.]"  DMSJ at 13.  Thus, EPA argues, it

need only find that justice requires a stay, according to its broad, discretionary determination of

what constitutes justice; a court, in contrast, may only grant a stay upon consideration of the

four-part preliminary injunction test.  See id.

   The Court disagrees with EPA.  The agency has failed to advance any persuasive

reason why it should be treated differently from a court when staying agency actions pending

judicial review.  Nothing in the text of Section 705 requires such a conclusion.  Moreover, the

legislative history of Section 705 makes clear the intent of that section: the standard for the

issuance of a stay pending judicial review is the same whether a request is made to an agency or to a court:

> This section permits *either agencies or courts*, if the proper showing be made, to maintain the status quo. . . . The authority granted is equitable and should be used by *both agencies and courts to prevent irreparable injury or afford parties an adequate judicial remedy*.

ADMINISTRATIVE PROCEDURE ACT, PUB. L. 1944-46, S. DOC. 248 at 277 (1946) (describing the intent of 5 U.S.C. § 1009(d), the prior version of Section 705) (emphasis added).

EPA neither employed nor mentioned the four-part test in its Delay Notice.  And as the court of appeals recently held, in considering whether a preliminary injunction is warranted "a district court *must* set forth its consideration of the [four] factors and its attendant conclusions of law[.]"  Gordon v. Holder, 632 F.3d 722, 724 (D.C. Cir. 2011) (emphasis added).  So must EPA, and the failure to do so in this case is arbitrary and capricious.

## 2.  Departure from Prior Precedents

Even if EPA were not required as a matter of law to employ the four-part preliminary injunction test in granting a stay under Section 705 of the APA, EPA previously has done so in its review of requests to stay its rules.  See In re Public Serv. Co. of N.H., 1 E.A.D. 389 (1977) (formal adjudication by Environmental Appeals Board applying the four-part test to a request for a stay under 5 U.S.C. § 705 and concluding that a stay was not warranted).  Indeed, as recently as eight months ago EPA reiterated its position that this four-part test sets forth the "merits criteria" for evaluating a request for an agency stay.  76 FED. REG. 28,318, at 28,326 (May 17, 2011) (in denying a request for an agency stay under 5 U.S.C. § 705, EPA stated that it

evaluated "the merits criteria for granting stays — the likelihood of success on the merits,

possibility of irreparable harm to the petition, harm to other parties, and the ultimate public

interest"); see 76 FED. REG. 4,780, at 4,800 (Jan. 26, 2011) (concluding that an agency stay under

5 U.S.C. § 705 was not warranted because "petitioners have not made a strong showing of

likelihood of success on the merits," and "petitioners' speculative arguments do not show that

they will suffer irreparable harm"; furthermore, disagreeing with petitioners' argument that "the

total absence of irreparable harm is not an impediment to granting an administrative stay");

75 FED. REG. 49,556, at 49,563 (Aug. 13, 2010) (concluding that an administrative stay under

5 U.S.C. § 705 was not warranted because, among other reasons, (1) the petitioner "has not made

a strong showing on the merits"; (2) the petitioner's arguments concerning irreparable harm fail

because they are "general, unspecific, and unsupported"; (3) the petitioner's "arguments that

EPA's standards . . . would have no important benefit . . . are rejected"; and (4) the petitioner's

"arguments concerning public interest . . . are rejected"); see also 61 FED. REG. 28,508, at 28,509

(June 5, 1996) (stating that the "criteria for a stay" under 5 U.S.C. § 705 include "likelihood of

irreparable harm" and "likelihood that the[] parties will ultimately prevail").  EPA in its Delay

Notice, however, failed entirely to provide a reasoned analysis or any rationale whatsoever to

justify its departure from its many prior precedents applying this four-part test.

It is established that an agency, like a court, "'[n]ormally . . . must adhere to its

precedents in adjudicating cases before it.'" Jicarilla Apache Nation v. U.S. Department of the

Interior, 613 F.3d 1112, 1120 (D.C. Cir. 2010) (quoting Consolidated Edison Co. of N.Y., Inc. v.

FERC, 315 F.3d 316, 323 (D.C. Cir. 2003)).  As the Supreme Court has stated:

34

> [I]f [an agency] announces and follows — by rule or by settled
> course of adjudication — a general policy by which its exercise of
> discretion will be governed, an irrational departure from that policy
> (as opposed to an avowed alteration of it) could constitute action
> that must be overturned as "arbitrary, capricious [or] an abuse of
> discretion" within the meaning of the [APA].

INS v. Yang, 519 U.S. 26, 32 (1996) (quoting 5 U.S.C. § 706(2)(A)); see Atchison, Topeka &

Santa Fe Ry. v. Wichita Bd. of Trade, 412 U.S. 800, 808 (1973) (stating that an agency has a

"duty to explain its departure from prior norms"); Air Transport Ass'n of Am., Inc. v. National

Mediation Bd., 2011 WL 6266355, at *8 ("[A]n agency remains free to change its views where

its action rests on reasoned decisionmaking."); Greater Boston Television Corp. v. FCC,

444 F.2d 841, 852 (D.C. Cir. 1971) ("[A]n agency changing its course must supply a reasoned

analysis indicating that prior policies and standards are being deliberately changed, not casually

ignored, and if an agency glosses over or swerves from prior precedents without discussion it

may cross the line from the tolerably terse to the intolerably mute.").  Thus, "'[a]n agency's

failure to come to grips with conflicting precedent constitutes an inexcusable departure from the

essential requirement of reasoned decisionmaking.'"  Jicarilla Apache Nation v. U.S. Department

of the Interior, 613 F.3d at 1120 (quoting Ramaprakash v. FAA, 346 F.3d 1121, 1125 (D.C. Cir.

2003)).

   As discussed, EPA previously has employed the four-part preliminary injunction

test in its review of requests to stay prior agency actions, see, e.g., In re Public Serv. Co. of New

Hampshire, 1 E.A.D. 389 (1977), and the agency expressly has stated that this test sets forth the

"merits criteria" for evaluating a request for a stay under 5 U.S.C. § 705.  76 FED. REG.

at 28,326.  EPA, of course, like any agency, "remains free to change its views where its action

rests on reasoned decisionmaking." Air Transport Ass'n of Am., Inc. v. National Mediation Bd., 2011 WL 6266355, at *8.  But EPA's Delay Notice provides no justification whatsoever — much less reasoned decisionmaking — for its departure from prior precedents, and the courts in this Circuit "have never approved any agency's decision to completely ignore relevant precedent."  Jicarilla Apache Nation v. U.S. Department of the Interior, 613 F.3d at 1120. "When an agency departs from its own prior precedent without explanation, . . . its judgment cannot be upheld."  Manin v. NTSB, 627 F.3d 1239, 1243 (D.C. Cir. 2011).

EPA now contends in a footnote in its motion papers that on prior occasions it "was simply responding to statements in the stay requests that claimed [that the four-part test was met]," but "did not refer to those factors as its reasons for denying the stay requests."  DMSJ at 13 n.9.  That claim, however, is refuted by the prior statements of the agency itself.  See, e.g., 76 FED. REG. at 4,800 (concluding that a stay under 5 U.S.C. § 705 was not warranted because "petitioners have not made a strong showing of likelihood of success on the merits," and "petitioners' speculative arguments do not show that they will suffer irreparable harm"; furthermore, disagreeing with petitioners' argument that "the total absence of irreparable harm is not an impediment to granting an administrative stay"); see supra at 33-34.  EPA therefore has failed, both in its Delay Notice and in its papers before this Court, to come to grips with its prior precedents.  For that reason the Delay Notice is arbitrary and capricious.  See Burlington N. & Sante Fe Ry. Co. v. Surface Transp. Bd., 403 F.3d 771, 777 (D.C. Cir. 2005) ("Where an agency applies different standards to similarly situated entities and fails to support this disparate treatment with a reasoned explanation and substantial evidence in the record, its action is arbitrary and capricious and cannot be upheld.").

### 3.  "Pending Judicial Review"

Finally, even if EPA were correct that a lower standard applied to stays at the agency level, such stays plainly must be tied to the underlying pending litigation when the APA rather than the Clean Air Act is the authority under which the stay is granted.  Under 5 U.S.C. § 705, an agency may "postpone the effective date of action taken by it, *pending judicial review*." 5 U.S.C. § 705 (emphasis added).  Although EPA references in passing the litigation pending in the court of appeals, see 76 FED. REG. at 28,663-64, its Delay Notice makes no effort to ground the stay on the existence or consequences of the pending litigation in that court.  In fact, the reasons that EPA provided in the Delay Notice for staying the effectiveness of the Boiler Rule and the CISWI Rule have nothing to do with the judicial review of the Boiler Rule and the CISWI Rule.  The purpose and effect of the Delay Notice plainly are to stay the rules pending reconsideration, not litigation.

The reasons for the Delay Notice articulated by EPA in the Notice relate entirely to the pending reconsideration proceedings: (1) "EPA has identified several issues in the final rules which it intends *to reconsider* because we believe the public did not have a sufficient opportunity for comment"; (2) "EPA received data before finalizing both rules but was unable to incorporate that data into the final rules," so that the "standards [may be] revised following *reconsideration* and full evaluation of the data"; and (3) "thousands of facilities . . . will need to begin to make major compliance investments soon" that "may not be reversible if the standards are in fact revised following *reconsideration* and full evaluation of all relevant data."  76 FED. REG. at 28,663 (emphasis added).  But EPA did not issue the Delay Notice under the reconsideration provision of the Clean Air Act, 42 U.S.C. § 7607(d)(7)(B), which limits stays to

a period not to exceed three months.  Instead, EPA invoked Section 705 of the APA so as to avoid that three-month limitation.

EPA stated in the Delay Notice that "[s]ince petitions for judicial review of both the Major Source Boiler MACT and the CISWI Rule [were] filed, and . . . justice require[d] a delay of the effective dates," it was "reasonable for the [agency] to exercise its authority to delay the effective dates of the Major Source Boiler MACT and the CISWI Rule under the APA for a period that exceeds three months."  76 FED. REG. at 28,663-64.  EPA therefore stayed the rules "until the proceedings for judicial review are completed or the EPA completes its reconsideration of the rules, whichever is earlier[.]"  76 FED. REG. at 28,664.  In fact, EPA states in its papers, "[g]iven that the [a]gency was confronted with petitions for administrative reconsideration and stay of the [r]ules, as well as petitions for judicial review, after the [r]ules were promulgated," the distinction between pending litigation and agency reconsideration proceedings is one "without a difference."  DMSJ at 15.

EPA is wrong.  The agency cannot use Section 705 of the APA to stay the effectiveness of its rules in order to avoid the three-month limitation on stays under the Clean Air Act simply because litigation in the court of appeals *happens to be pending*.  Where, as in this case, EPA seeks to justify a stay of its rules "pending judicial review," the agency must have articulated, at a minimum, a rational connection between its stay and the underlying litigation in the court of appeals.  But EPA has not done so: although EPA paid lip service to the pending litigation in the court of appeals, its stated purpose in promulgating the Delay Notice was to delay the Boiler Rule and the CISWI Rules pending reconsideration for a period that exceeds three months.  This slight of hand is not authorized either by the Clean Air Act or the APA.

38

EPA now argues in the papers it filed in this Court that the reasons set forth in the Delay Notice "establish litigation risk," justifying the stay.  DMSJ Reply at 9.  EPA further contends that it issued the Delay Notice because of the "risk that the [r]ules could be vacated by the D.C. Circuit."  Id.  But the Delay Notice itself makes no mention of any concern about the substantive merit of its rules, and the Court will not uphold an agency decision "where the agency has offered a justification in court different from what it provided in its opinion." Morgan Stanley Capital Group, Inc. v. Public Util. Dist. No. 1 of Snohomish Cnty., 554 U.S. 527, 544 (2008); see Manin v. NTSB, 627 F.3d at 1245 (courts "generally may not uphold agency action on a basis other than that relied upon by the agency").  Moreover, the administrative record belies EPA's purported concern about "litigation risk": as EPA itself stated in its May 21, 2011 notice of reconsideration — explicitly referenced by the agency in finding that justice required the issuance of the Delay Notice, 76 FED. REG. at 28,663 — although some issues relating to the Boiler Rule and CISWI Rule could "benefit from additional public involvement," the agency "believe[s] that the final [Boiler and CISWI] rules reflect *reasonable approaches consistent with the requirements of the Clean Air Act*."  AR at 187 (emphasis added). The Court therefore concludes that EPA's Delay Notice has no rational connection to the underlying litigation in the court of appeals.  Consequently, the Delay Notice is arbitrary and capricious.

## D.  Remedy

For the reasons set forth above, the Court concludes that EPA's Delay Notice is arbitrary and capricious.  Sierra Club contends that such a conclusion necessarily requires that the

Court vacate the Delay Notice, see Pl. Supp. Reply at 10 ("If EPA acted . . . arbitrarily, the Delay

Notice must be vacated."), whereas EPA requests that the Court remand the Delay Notice to the

agency for further consideration without vacating it.  See Def. Supp. Response at 8.

> While an agency's failure to set forth a reasoned
> explanation requires a reviewing court to remand to the agency for
> further consideration, see Motor Vehicle Mfrs. Ass'n v. State Farm
> Mut. Auto Ins. Co., 463 U.S. 29, 57 (1983), such a defect does not
> necessarily require vacatur.  See, e.g., Advocates for Highway &
> Auto Safety v. Federal Motor Carrier Safety Admin, 429 F.3d
> 1136, 1151 (D.C. Cir. 2005) ("While unsupported agency action
> normally warrants vacatur, . . . this court is not without discretion
> [to remand without vacating].");  Allied Signal, Inc. v. Nuclear
> Regulatory Comm'n, 988 F.2d 146, 150 (D.C. Cir. 1993) ("An
> inadequately supported rule . . . need not necessarily be vacated.").
> The decision whether to vacate hinges on [1] "the seriousness of
> the [regulation's] deficiencies (and thus the extent of doubt
> whether the agency chose correctly) and [2] the disruptive
> consequences" of vacatur.  Int'l Union, United Mine Worker of
> America v. Federal Mine Safety & Health Admin, 920 F.2d 960,
> 967 (D.C. Cir. 1990).

American Petroleum Inst. v. Johnson, 541 F. Supp. 2d 165, 185 (D.D.C. 2008); see Heartland

Reg'l Med. Ctr. v. Sebelius, 566 F.3d 193, 197 (D.C. Cir. 2009); see also Humane Soc'y of the

U.S. v. Kempthorne, 579 F. Supp. 2d 7, 21 (D.D.C. 2008).

> "[I]n deciding whether to vacate a flawed agency action, the district court should

be guided by two principal factors: (1) the seriousness of the . . . deficiencies of the action, that

is, how likely it is the [agency] will be able to justify its decision on remand; and (2) the

disruptive consequences of vacatur."  Heartland Reg'l Med. Ctr. v. Sebelius, 566 F.3d at 197

(quotations omitted) (alterations in original).  Having considered the two principal factors in

deciding whether to vacate EPA's flawed action, the Court concludes that vacating the Delay

Notice is the appropriate remedy in this case.

40

First, the Court doubts that EPA will be able to justify a decision to stay the Boiler Rule and the CISWI Rule pending judicial review in the court of appeals. EPA has not persuaded the Court that there is "'a serious possibility'" that it would be able to offer an adequate explanation for its decision on remand. American Petroleum Inst. v. Johnson, 541 F. Supp. 2d at 185 (quoting Milk Train, Inc. v. Veneman, 310 F.3d 747, 756 (D.C. Cir. 2002)). As discussed, although EPA has attempted to characterize the Delay Notice as a stay pending judicial review, the rationale offered for the Delay Notice relates exclusively to the pending reconsideration proceedings. Furthermore, after EPA promulgated the Delay Notice, the agency then moved the court of appeals to hold its review in abeyance until the agency finished its reconsideration proceedings, likely ensuring that the Delay Notice will end only when EPA completes the reconsideration process. EPA since has informed the Court that it anticipates it will complete reconsideration proceedings and will sign final Boiler and CISWI Rules by April 30, 2012, DMSJ at 5 — thereby effectively granting itself the extension that this Court expressly rejected. See Sierra Club v. Jackson, 2011 WL 181097, at *11 ("Because EPA has not met its heavy burden of demonstrating that it would be impossible to promulgate substantively adequate regulations . . . , the Court denies EPA's request for an extension of time until April 13, 2012 so that EPA can re-propose the Three Air Rules."). It is clear to the Court that EPA's Delay Notice, in form and effect, operates as a stay pending reconsideration, not litigation. The first factor therefore weighs in favor of vacating the Delay Notice.

The second factor also weighs in favor of vacatur. EPA, in issuing the Delay Notice, noted that "thousands of facilities across multiple, diverse industries will need to begin to make major compliance investments soon, in light of the pressing compliance deadlines."

41

76 FED. REG. at 28,663.  EPA further noted that "[t]hese investments may not be reversible *if* the standards are in fact revised following reconsideration and full evaluation of all relevant data." Id. (emphasis added).  The Court acknowledges that vacating the Delay Notice likely will have an effect on industry facilities throughout the country: they will finally, more than 12 years after a clear congressional mandate, have to comply with overdue Clean Air Act emission standards.  But although the Boiler Rule and the CISWI Rule *may* be changed after the reconsideration proceedings, EPA itself, in initiating reconsideration, expressly stated that the rules "reflect reasonable approaches consistent with the requirements of the Clean Air Act."  AR at 187. Vacating the Delay Notice, therefore, will simply require industry facilities to comply with emission standards that EPA itself states are consistent with the Clean Air Act.  And finally, as Sierra Club points out, see PMSJ at 14, permitting the Delay Notice to remain in place and thereby depriving the Boiler Rule and the CISWI Rule of their effectiveness could have significant deleterious effects on the environment.  See Davis Cnty. Solid Waste Mgmt. v. U.S. EPA, 108 F.3d 1454, 1458 (D.C. Cir. 1997) (considering harm to environment that vacatur of emission standards would impose).  The Court therefore will vacate the Delay Notice and remand the Delay Notice to EPA for further proceedings consistent with this Opinion.

## IV.  CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part the parties' cross-motions for summary judgment.  It will enter judgment for EPA on Claim 1 and Claim 2 and for Sierra Club on Claim 3.  As a result, the Court will declare unlawful EPA's Delay Notice,

will vacate the Delay Notice, and will remand the Delay Notice to EPA for further proceedings

consistent with this Opinion.

      An Order consistent with this Opinion shall issue this same day.

      SO ORDERED.


                                        /s/
                                    _____
                                    PAUL L. FRIEDMAN
DATE:  January 9, 2012                United States District Judge